The Hanover National Bank of the City of New York, Respondent, v. The American Dock and Trust Company, Appellant.

1. Negotiable Warehouse Certificates — Issuance by Officer to Himself, without Express Authority — Liability of Company to Transferee. If a bank in good faith makes a personal loan to an officer of a warehouse company having express authority to sign and issue negotiable warehouse receipts or certificates for goods deposited by persons other than himself, but having no such authority to sign or issue certificates in his own favor, upon the transfer to it, as collateral security, of a warehouse certificate issued and signed by such officer in his own favor, and giving on its face a purchaser thereof such notice as should put a prudent person upon inquiry in regard to the officer's authority, the bank, in order to maintain an action against the company on the certificate, on the company's failing to produce, or pay the value of, the goods mentioned therein and claiming that no such goods had been deposited, must show that implied authority had been conferred upon the officer to issue certificates to himself for goods that he had actually deposited.

2. Issuance of Warehouse Certificates — Authority Implied from Acquiescence. If an officer of a warehouse company having express authority to issue negotiable warehouse certificates to others for goods deposited, but having no such authority to issue certificates to himself, does issue warehouse certificates in his own favor, to the knowledge, express or implied, of the company's directors, their acquiescence in such acts, after having had a reasonable time to put an end thereto, will permit the inference that the act of certifying in his own favor was within the officer's actual authority, and will estop the company from denying, as to purchasers for value, that the power to so certify in fact existed.

3. Negotiable Instrument — Failure of Purchaser to Inquire as to Validity. One who purchases a negotiable instrument under circumstances that throw upon him the duty of making inquiry as to its validity, assumes no greater risk by his failure to inquire than the burden of proving that the facts which he could have discovered, had he inquired, would have protected him.

4. Warehouse Certificates — Liability of Company — Laches of Directors. The ignorance of directors of a warehouse company that one of their officers, who had express authority to issue negotiable warehouse certificates to others for goods deposited, had in as many as five instances issued warehouse certificates in his own favor on goods deposited by him, on the return of which deliveries had been made by the company in the general course of its business, furnishes no excuse to the company as against a purchaser for value of a certificate subsequently issued by

that officer in his own favor, for which no goods appeared to have been deposited, unless the directors were reasonably diligent in supervising the method and details of conducting the business under their control.

5. DIRECTORS OF CORPORATION — IMPLIED KNOWLEDGE AS TO BOOK ENTRIES. The directors of a warehouse company, being charged with the duty of reasonable inspection of its books and reasonable supervision of the conduct of its officers, are, as to a purchaser for value of one of the company's negotiable warehouse certificates, chargeable with knowledge of whatever the entries in the books of the company, made in the ordinary course of its business, would have disclosed on inspection.

Reported below, 75 Hun, 55.

(Argued February 20, 1896;  decided March 3, 1896.)

APPEAL from judgment of the General Term of the Supreme Court in the first judicial department, entered upon an order made January 18, 1894, which reversed a judgment in favor of defendant entered upon a verdict directed by the court, and also reversed an order denying a motion for a new trial, and ordered a new trial.

The plaintiff, a national bank, brought this action against the defendant, a corporation created by chapter 881 of the Laws of 1872 and engaged in carrying on a warehouse and storage business, to recover the possession of a quantity of cotton, or, if delivery could not be had, for the value thereof. The defendant has power under said statute to issue negotiable receipts, transferable by indorsement and delivery, for any property stored with it, and the holder thereof is made the owner of such property, either "absolutely or as a pledge for any advance or credits on the same, as the case may be, subject, however, to all charges thereon."

From 1876 until 1890 one M. W. Stone was vice-president of the defendant, and from 1890 until his death, on the 27th of March, 1891, he was president. While holding either office he had power, according to the by-laws, to sign the certificates or receipts issued by the defendant, but he was never the sole officer having that authority, as the secretary or treasurer was also empowered to act in that capacity. In fact Stone signed substantially all of the receipts issued while he was an officer of the defendant. As he was the "business

head " of the company, it was regarded as safer and more convenient to leave that duty to him, "almost exclusively," so that he could keep "track of it," and thereby the danger of issuing duplicate receipts would be avoided. He was the general superintendent of the piers and warehouses, and had more to do with the business management than any one else. While vice-president he issued five certificates for cotton actually deposited, each to his own order, as follows, viz., June 15th, 1881, for one hundred bales; Nov. 9th, 1881, for eighty-three bales; March 16th, 1886, for forty-one bales; April 14th, 1886, for eighty-five bales; May 24th, 1886, for two hundred and sixty-one bales. There was evidence tending to show that each of these receipts or certificates was used, returned and canceled in the regular course of business. A stub corresponding to the certificate was made out, when the latter was issued, and a receipt was taken from Stone, individually, for the negotiable certificate. This receipt and the stub always continued in the possession of the company, and the certificates, when surrendered on the delivery of the cotton, were filed or pasted in the same book therewith, so as to present at a glance a complete history of the transaction. The cotton was not always delivered all at once, and in case of a partial delivery, sometimes the old certificate was surrendered and a new one issued, and sometimes an indorsement of the fact was made on the back of the certificate which was retained by the owner of the cotton. Thus, five indorsements of partial delivery appear on the back of the certificate issued April 14th, 1886, in the following form, viz. : "Endorsement for delivery. The property mentioned below is hereby released from this receipt for delivery from warehouse. Aug. 6, 1886, three (bales), M. W. Stone, V. P. — Gendar." Four other indorsements, similar in form, follow, each signed in the same way, the last one being dated October 30th, 1886.

Gendar was the bookkeeper, and, as such, made the indorsements, and signed his name beneath the entry in each instance. The certificate dated June 15th, 1881, for one hundred bales,

was surrendered on the 29th of November following, seventeen bales being then delivered and a new certificate issued for the remaining 83 bales. On the stub of the certificate dated March 16th, 1886, were the words, "taken over not found," and on that dated April 14th, 1886, were the words, "storage paid for by M. W. S. not found." These entries were not explained, although an explanation was asked of an officer of the defendant, when a witness on the stand. The blanks in the body of said receipts were filled out in the handwriting of Mr. Hascy, who was at the time secretary of the defendant. In 1878 and 1891 he was also one of the directors. The form of the certificate issued to Mr. Stone, and the method of doing the business with him was the same in all respects as in the case of a stranger. The clerk in charge of the defendant's warehouse reported to the company the cotton stored by Stone the same as any other, but never heard any comment made upon the fact.

For twelve or thirteen years prior to 1891, the plaintiff was in the habit of lending money upon certificates issued by the defendant, either directly or by accepting them as collateral security upon the discount of notes. From 1884 until 1891 it had been lending Stone money upon such certificates as collateral. In 1884 or 1885, Mr. Halls, the assistant cashier of the plaintiff, asked Mr. Hascy at the office of either the plaintiff or the defendant, if any officer other than Mr. Stone was authorized to sign the certificates, and Mr. Hascy answered "No," and added that the president and treasurer were not able to attend to it at their other places of business by looking up the matter on the books so as to know that the entries were all right, and "so the whole authority was conferred upon Mr. Stone to be the sole man to sign these receipts." The substance of this was repeated subsequently on several occasions, when similar inquiries were made.

On March 17th, 1891, the plaintiff discounted for Stone his individual note for $5,000, at ninety days, and took from him as collateral security a certificate of the defendant in the usual

form signed by Stone as president, dated March 11th, 1891, for 172 bales of cotton. It was issued "for account of M. W. Stone," who indorsed it individually, and in the list of officers at the top his name appeared as president. On the left-hand margin there was printed transversely across the paper these words: "This receipt is valid only when signed by either the president or treasurer." Mr. Donald, the cashier of the plaintiff, who represented it in discounting the note, knew that Stone was president of the defendant, and would have known, had he noticed, that the blanks in said certificate were filled in Stone's handwriting  Mr. Donald made no inquiries as to whether the cotton was on deposit with the defendant of any one except Stone. He trusted to Stone's representations, and, in reliance upon them and upon the certificate, made the loan.  Upon January 15th and February 6th, 1891, the plaintiff, through. Mr. Halls, had discounted notes of Stone for $5,000 and $6,000 respectively, taking similar certificates as security.  When Stone died, on March 27th, 1891, all three certificates were outstanding, the notes to which they were collateral being none of them due. The defendant claims that no cotton was deposited by Stone as the basis for any one of these three certificates and gave evidence tending to establish that as a fact.  This action is founded on the certificate dated March 11th, 1891, the defendant having refused to deliver the cotton mentioned therein upon demand made.  It appeared upon the trial that Stone obtained from the lithographer who printed certificates for the defendant a number of blanks laid aside as defective for some reason.  The certificate in question was not numbered by the printing machine as those in common use by the defendant were, but the number was stamped upon it, probably by a rubber stamp.

At the close of the evidence the counsel for the defendant asked the court to direct a verdict in its favor.  The counsel for plaintiff thereupon asked "to go to the jury on the question whether the action of the defendant in permitting Mr. Stone to issue certificates in his own favor during the years

1881 and 1886 was not such an acquiescence in his act as gave the plaintiff a right to rely upon the validity of such a certificate when issued by Mr. Stone. Also upon the question whether the information given to Mr. Halls by Mr. Hascy, the secretary of the company, did not justify the plaintiff in relying upon this collateral security as being valid when signed by Mr. Stone, and whether the long course of dealing, allowing Mr. Stone to have the entire control of this business, did not estop the defendant from claiming that this certificate is invalid."

The court denied the application of the plaintiff and granted that of the defendant, exception to each ruling being taken.

Upon appeal to the General Term the judgment entered in favor of the defendant was reversed and a new trial granted. From that determination this appeal is brought.

*Thaddeus D. Kenneson* for appellant. The burden of establishing the authority of Stone, as president of the defendant, to sign and issue the spurious warehouse receipt, is upon the plaintiff. (*W. S. L. S. Bank* v. *G. F. D. & S. C. Bank,* 95 U. S. 551; *Chrystie* v. *Foster,* 61 Fed. Rep. 551; *Dob* v. *Halsey,* 16 Johns. 34; *Joyce* v. *Williams,* 14 Wend. 141; *Foot* v. *Sabin,* 19 Johns. 154; *Levenson* v. *Lane,* 13 C. B. [N. S.] 278; *Stall* v. *Catskill Bank,* 18 Wend. 466.) There was no express authority shown. (*Bank of N. Y. N. B. Assn.* v. *A. D. & T. Co.,* 143 N. Y. 559.) There was no evidence of authority by estoppel. (*People* v. *Bank of N. A.,* 75 N. Y. 547.) The defendant is not estopped to deny Stone's authority to issue the spurious warehouse receipt because of any representation made either by Stone himself or by Hascy, the secretary of the defendant, as to Stone having sole authority to issue warehouse receipts. (*Sinclair* v. *Jackson,* 8 Cow. 543; *Griswold* v. *Haven,* 25 N. Y. 595; *Imhoff* v. *Imhoff,* 45 La. Ann. 706; *Wheelock* v. *Henshaw,* 19 Pick. 341; *Wheelock* v. *Thayer,* 16 Pick. 68; *Holmes* v.

*Grover,* 33 N. J. L. 462.) The defendant is not estopped by negligence on the part of its board of directors from denying the authority of Stone, as president, to issue the warehouse receipt. (*People* v. *Bank of N. A.,* 75 N. Y. 547.) The trial court would not have been warranted in submitting the evidence to the jury as sufficient to authorize a finding by them that Stone had implied authority to issue the spurious warehouse receipt. (*People* v. *Bank of N. A.,* 75 N. Y. 547; *Bank of N. Y. N. B. Assn.* v. *A. D. & T. Co.,* 143 N. Y. 559; *Wilson* v. *Williams,* 14 Wend. 146; *W. Nat. Bank* v. *Armstrong,* 152 U. S. 346; *Alexander* v. *Cauldwell,* 83 N. Y. 480; *Rudd* v. *Robinson,* 126 N. Y. 113; *Graves* v. *Horton,* 35 Minn. 66; *N. Y. & N. H. R. R. Co.* v. *Schuyler,* 34 N Y. 30; *Kendall* v. *Wood,* L. R. [6 Ex. Cas.] 243; *Elliott* v. *Dudley,* 19 Barb. 326.) The plaintiff is in no better position in this action than Stone would be were he alive and seeking to enforce the spurious receipt against the defendant company. (*Wilson* v. *M. E. R. Co.,* 120 N. Y. 145; *Farrington* v. *S. B. R. R. Co.,* 150 Mass. 406; *Moores* v. *C. Nat. Bank,* 111 U. S. 156; *Garrard* v. *P. & C. R. Co.,* 29 Penn. St. 154; *Cheever* v. *P. S. & L. E. R. R. Co.,* 72 Hun, 380.) The question at the end of the trial was, not whether there was literally no evidence from which the jury could infer implied authority in Stone as defendant's president to issue warehouse certificates in his own favor; it was rather whether the evidence was sufficient to justify twelve men of ordinary reason and fairness in inferring the existence of such authority. (*Ryder* v. *Wombell,* L. R. [4 Ex.] 32; *Bridges* v. *N. L. R. Co.,* L. R. [7 H. L.] 213; *M. R. Co.* v. *Jackson,* L. R. [3 App. Cas.] 193; *Ryan* v. *M. R. Co.,* 121 N. Y. 126; *Linkauf* v. *Lombard,* 137 N. Y. 417; *Hemmens* v. *Nelson,* 138 N. Y. 517; *Lane* v. *Town of Hancock,* 142 N. Y. 510.)

*Thomas S. Moore* for respondent. The defendant is liable for the fraudulent act of its president in issuing a spurious certificate. (*N. R. Bank* v. *Aymar,* 3 Hill, 262; *F. & M.*

*Bank* v. *B. & D. Bank*, 16 N. Y. 125 ; *N. Y. & N. H. R. R. Co.* v. *Schuyler*, 34 N. Y. 30 ; *Bank of Batavia* v. *N. Y., L. E. & W. R. R. Co.*, 106 N. Y. 199 ; *Martin* v. *N. F. P. M. Co.*, 122 N. Y. 165 ; *F. A. Bank* v. *F. S. S., etc., R. R. Co.*, 137 N. Y. 231 ; *Bank of N. Y. N. B. Assn.* v. *A. D. & T. Co.*, 143 N. Y. 559 ; *Conover* v. *Mut. Ins. Co.*, 1 N. Y. 290 ; *Booth* v. *F. & M. N. Bank*, 50 N. Y. 396 ; *Leslie* v. *Lorillard*, 110 N. Y. 519 ; *Holmes* v. *Willard*, 125 N. Y. 75 ; *Patterson* v. *Robinson*, 116 N. Y. 193 ; *Rathbun* v. *Snow*, 123 N. Y. 343 ; *N. Y., P. & B. R. R. Co.* v. *Dixon*, 114 N. Y. 80 ; Morawetz on Corp. §§ 251–253 ; *Hastings* v. *B. L. I. Co.*, 138 N. Y. 473, 479 ; *Oakes* v. *C. W. Co.*, 143 N. Y. 436 ; *Griswold* v. *Haven*, 25 N. Y. 595 ; *Mining Co.* v. *A. C. Bank*, 104 U. S. 192 ; *Martin* v. *Webb*, 110 U. S. 7 ; *F. Nat. Bank* v. *N. P. Co.*, 56 Hun, 136 ; 119 N. Y. 256 ; *Phillips* v. *Campbell*, 43 N. Y. 271 ; *Beers* v. *P. G. Co.*, 14 Barb. 360 ; *People* v. *Bank of N. A.*, 75 N. Y. 547 ; *Holden* v. *N. Y. & E. Bank*, 72 N. Y. 286 ; *Hyatt* v. *Clark*, 118 N. Y. 563 ; *Wilson* v. *M. E. R. Co.*, 120 N. Y. 145 ; *Cowing* v. *Altman*, 71 N. Y. 442 ; *Williams* v. *Mitchell*, 17 Mass. 101 ; *Cheever* v. *P. S. & L. E. R. R. Co.*, 72 Hun, 380 ; *Shaw* v. *Spencer*, 100 Mass. 380.)

VANN, J.   As a verdict was directed against the plaintiff, it is entitled to the most favorable inferences that can fairly be drawn from the evidence. (*Raabe* v. *Squier*, 148 N. Y. 81.) The jury, therefore, might have found the facts as they appear in the foregoing statement, and might have drawn such inferences from those facts as any reasonable view thereof would permit.

A certificate issued by the defendant was negotiable, and a purchaser thereof, for value and without notice of any fact to put him on inquiry, was entitled to receive from the defendant the property described therein on payment of the lawful charges. (*Bank of New York* v. *This Defendant*, 143 N. Y. 559 ; Laws 1872, ch. 881, sec. 6.) As the defendant failed to produce the goods when called for, the burden was cast upon it, *prima facie*, of either accounting for them or paying for

them. (*Schwerin* v. *McKie*, 51 N. Y. 180.)   It did neither, but when this action was commenced, alleged as a defense that said certificate was issued by Medad W. Stone, its president, to his own order, without any authority from the board of directors.   While Stone had express authority to sign and issue warehouse receipts for cotton deposited with the defendant by persons other than himself, he had no such authority to sign or issue warehouse receipts in his own favor, even for cotton that had actually been deposited by him.  (*Bank of New York* v. *This Defendant, supra.*)

As the certificate on its face gave a purchaser such notice as should put a prudent person upon inquiry in regard to Stone's authority, the plaintiff, in order to succeed, was required to show that implied authority had been conferred upon him to issue certificates to himself for cotton that he had actually deposited.   If he was authorized, either expressly or impliedly, to issue certificates to himself for his own cotton on deposit, and he issued a receipt, on his personal account, for cotton not on deposit, in the language of the case last cited " the defendant would be liable to respond to a *bona fide* holder for value of such receipt."   (Id. 563.)   This is upon the ground that an agent may bind his principal within the limits of the authority with which he has apparently been clothed in respect to the subject-matter.   Thus the authority of an agent is enlarged, as to third persons, by implication, when the principal permits him to do acts not expressly authorized.   For the protection of innocent persons the law will imply authority in an agent to do acts which, although forbidden by the principal before they are done, are, nevertheless, recognized by him as valid after they are done.   If, through inattention or otherwise, the principal suffers his agent to act beyond his authority without objection, he is bound to those who are not aware of any want of authority to the same extent as if the requisite power had been directly conferred.   (*New York & New Haven R. R. Co.* v. *Schuyler*, 34 N. Y. 30, 58.)   Under such circumstances the principal is estopped from asserting the truth, by his own conduct in

inducing third persons to believe that the agent had due authority to act in the given case. (Id. 60.)

If, therefore, Stone issued certificates to himself for cotton, to the knowledge, express or implied, of defendant's directors, their acquiescence in such acts, after allowing them a reasonable time to put an end to action of that nature, would estop them from denying, as to purchasers for value, that the power to so certify in fact existed. Acquiescence, under such circumstances, would permit the inference that the act of certifying in his own favor was within his actual authority (*Martin* v. *Niagara Falls, &c., Co.*, 122 N. Y. 165), and with that power in existence, or by implication presumed to exist, the issuance of the certificate in question would come within the scope of his authority, and the presence of the cotton in storage was an extrinsic fact in regard to which his representations as agent would bind the defendant. (*Bank of Batavia* v. *New York, Lake Erie & W. R. R. Co.*, 106 N. Y. 195.) The act of certifying would thus become a representation by Stone that the cotton was on deposit, since that fact would " necessarily and peculiarly " be within his knowledge as the defendant's agent. (*Fifth Avenue Bank* v. *Forty-second Street, &c., R. R. Co.*, 137 N. Y. 231.)

It appeared upon the trial that, out of more than 26,000 certificates issued by the defendant, substantially all were signed by Stone. Mr. A. J. Pouch, the secretary and treasurer for two years, and treasurer alone for eleven years more, when on the witness stand, would not say that he, himself, had signed as many as six, and he thought that Mr. Hascy, who was secretary for twelve years and until he died in 1891, might have signed some. Mr. F. H. Pouch, who succeeded A. J. Pouch as treasurer, and continued in that capacity until Stone's death, would not swear that he had signed more than two. On several occasions, while the plaintiff was lending Stone money on the faith of these certificates, inquiry was made by the bank, through one of its officers, of the defendant's secretary " as to whether any other officer of the company than Mr. Stone was authorized to sign certificates," and each time Mr. Hascy

said in substance that the exclusive authority to sign receipts had been conferred on Mr. Stone.

Whether or not this was enough to carry the case to the jury we are not required to decide, for the purchaser of a negotiable instrument, who purchases under circumstances that throw upon him the duty of making inquiry as to its validity, assumes no greater risk by his failure to inquire than the burden of proving that the facts which he could have discovered, had he inquired, would have protected him. ( *Wilson* v. *Met. El. R'way Co.*, 120 N. Y. 145; *Cowing* v. *Altman*, 71 N. Y. 435, 442.) Therefore, if the plaintiff when charged with the duty of making inquiry had actually done so, whatever its officers prosecuting the investigation would naturally have discovered, according to any permissible inference from the evidence, it can now invoke to establish the implied authority of Mr. Stone. What could the jury have found in this regard, within the rules governing their powers, if the case had been submitted to them for decision? They could have found, in addition to facts already mentioned, that cotton had been stored from time to time by Stone and that this was regularly reported to the company; that he had issued to himself two certificates as early as 1881, and three more in 1886; that they were made out by the secretary of the company, and that one of these certificates, indorsed by Stone, individually, was promptly returned and placed among the records of the defendant as a completed transaction. Moreover, as all of these certificates were issued for a current commodity, which in the usual course of business does not remain on storage but a short time, the jury could further have found that they were, within a reason the time, indorsed, returned, and put in the books of the company, the same as those given to other patrons. Furthermore, one of these certificates would have shown that five partial deliveries were made before final surrender of the receipt, each indorsed by the bookkeeper in the employ of the defendant, in the usual course of business. Thus it would have appeared that Stone had openly assumed to issue certificates to himself for deposits

of cotton, with no evidence that any objection had been made by the directors, or in their behalf. The number of times that he did so is mainly important in its bearing upon the probability that the directors knew that he did it at all. While it does not appear that they actually knew of these transactions, it was a question of fact for the jury to say whether they ought not to have known, under all the circumstances, as their ignorance was no excuse, unless they were reasonably diligent in supervising the method and details of conducting the business under their control.

The language used by the Supreme Court of the United States with reference to a bank, may be repeated here as applicable to the defendant: "Directors cannot, in justice to those who deal with the bank, shut their eyes to what is going on around them. It is their duty to use ordinary diligence in ascertaining the condition of its business and to exercise reasonable control and supervision of its officers. They have something more to do than, from time to time, to elect officers of the bank and to make declarations of dividends. That which they ought, by proper diligence, to have known as to the general course of business in the bank, they may be presumed to have known in any contest between the corporation and those who are justified by the circumstances in dealing with its officers upon the basis of that course of business." (*Martin* v. *Webb*, 110 U. S. 7, 15.)

Whatever the entries in the books of the defendant, made in the ordinary conduct of its business, would have disclosed, the jury would have been warranted in finding had come to the knowledge of the directors, who were charged with the duty of reasonable inspection of the books and reasonable supervision of the conduct of the officers.

They might have been satisfied that the directors knew that Stone was occasionally creating obligations against the company in his own favor and that the directors "gave him authority by acquiescing in its exercise." (*Fifth National Bank* v. *Navassa Phosphate Co.*, 119 N. Y. 256, 261.) While the evidence is not conclusive, it tends to establish that

fact, and we think presented a question that should have been submitted to the jury. They could reasonably have believed from all the evidence that these acts of Stone, and the authority assumed by him, were approved by the company, and that he, therefore, possessed actual authority to issue certificates in his own favor. Upon this basis, as we have already seen, the defendant would be estopped from denying the validity of the certificate in question, and the plaintiff would be entitled to recover.

We think that the learned General Term was correct in its conclusion, and that its judgment should be affirmed, and judgment absolute directed against the defendant, in accordance with the stipulation contained in the notice of appeal.

All concur.

Judgment accordingly.