CORN EXCHANGE BANK OF THE CITY OF NEW YORK v. AMERICAN DOCK & TRUST CO.

(Supreme Court, Appellate Division, First Department. February 12, 1897.)

1. WAREHOUSE COMPANIES—ACTION ON WAREHOUSE RECEIPT—EVIDENCE.
In an action against a warehouse company by a bona fide holder of a cotton receipt issued by the company's president to himself, it was immaterial whether he had deposited any cotton in the warehouse or not.

2. SAME—APPARENT AUTHORITY OF PRESIDENT.
Where it appeared in such case that the president had not express authority to issue receipts for cotton deposited by himself, it was proper to admit evidence as to his relation to the company, and as to his acts on its behalf, and

the company's acts in voluntarily surrendering into his hands the actual control and management of all its business, and that he had before issued certificates to himself, which were entered in the company's books, and recognized by it and its officers as valid.

**3. SAME—LIABILITY TO HOLDERS OF RECEIPTS.**

Where the president of a warehouse company has authority to issue receipts to himself for his own cotton, the company is liable to a bona fide holder of such receipt on failure to deliver on demand the cotton mentioned in it. Hanover Nat. Bank of New York v. American Dock & Trust Co., 43 N. E. 72, 148 N. Y. 612, followed.

**4. SAME—ESTOPPEL.**

A bank, before advancing money on a receipt for cotton issued by a warehouse company, sent its agent to the warehouse to ascertain if the cotton was on deposit. He gave to the superintendent, who had general charge of the warehouse and custody of the property there stored, a copy of the certificate, and told him he had come to see if the cotton was in store. The superintendent said, "That cotton is here all right in store, but I cannot show it to you now, because it has an inspection number." *Held*, that the company was estopped to deny that the person named in the receipt had on deposit the cotton mentioned in it.

**5. APPEAL—REVIEW—OBJECTIONS WAIVED.**

In an action on a warehouse receipt, where the court, at defendant's request, submits to the jury the question whether defendant was estopped to deny that the property mentioned in the receipt was on deposit in its warehouse, it cannot on appeal insist that the case was submitted on a wrong theory.

Appeal from trial term, New York county.

Action by the Corn Exchange Bank of the City of New York against the American Dock & Trust Company to recover for the conversion of 194 bales of cotton. From a judgment entered on the verdict of a jury in favor of plaintiff, and from an order denying a motion for a new trial, made on the minutes, defendant appeals. Affirmed.

Argued before VAN BRUNT, P. J., and BARRETT, RUMSEY, O'BRIEN, and INGRAHAM, JJ.

Thaddeus D. Kenneson, for appellant.

John M. Bowers, for respondent.

INGRAHAM, J. Actions against this defendant upon warehouse receipts similar in form to the one in suit have been before the court of appeals upon three appeals; and we have, in determining this appeal, only to apply the rules settled by the court.

Stone, the president of the defendant, was, under express authority from the board of directors, authorized to sign warehouse receipts. Stone took to the plaintiff, and delivered to it, for a valuable consideration, a receipt signed by himself as president, whereby he certified that there had been received in storage at the American docks, for the account of M. W. Stone, a certain number of bales of cotton, which was subject to the order of Stone on payment of the charges accrued thereon and the surrender of this receipt. The plaintiff demanded the cotton covered by the receipt from the defendant, which was refused; and this action was then commenced, the plaintiff alleging the demand for the cotton, a tender of the defendant's charges, a refusal by the defendant to accept, that the value of the cotton at the time of the said tender and refusal was the sum of $8,107.15,

and demanding judgment for the recovery of that amount, with interest. The form of the action is, therefore, for the conversion of the cotton covered by the warehouse receipt issued by Stone, certifying that he (Stone) had on deposit the defendant's cotton, and the transfer of such receipts by Stone to the plaintiff.

In determining the legal principles applicable to an action to recover for a failure to deliver the cotton specified in these receipts, the court of appeals has said:

"If the president had issued a receipt similar to the one in question, except that it acknowledged the receipt of cotton from some third person, although such named person had not in fact deposited any cotton, yet in such case the defendant would have been liable, because the president had general authority under the by-law to issue receipts for cotton deposited by third parties; and therefore, when he issued a receipt where no cotton had been received, although it was a violation of his authority and of his duty, yet the defendant would be held responsible on account of such general authority to give receipts. * * * That principle ·is that where an agent has been clothed by his principal with power to do an act in case of the existence of· some fact peculiarly within the knowledge of the agent, and where the doing of the act is in itself a representation of the existence of that fact, the principal is estopped from denying its existencé as against third parties, dealing with the agent in good faith, and in reliance ˙upon the representation. * * * If the by-law clothed Mr. Stone, the president, with general authority to issue receipts to himself for cotton which he actually deposited, if with such authority he issued a receipt where he had not in fact deposited any cotton, the defendant would be liable to respond to a bona fide holder for value of such receipt. * * * The by-law or resolution in question ought not to be construed as clothing either the president or the treasurer with any authority to issue receipts to himself for cotton which in truth had been deposited by him. It is an acknowledged principle of the law of agency that a general power or authority given to the agent to do an act in behalf of the principal does not extend to a case where it appears that the agent himself is the person interested on the other side." Bank of New York National Banking Ass'n v. American Dock & Trust Co., 143 N. Y. 559, 38 N. E. 713.

It is thus settled that Stone had no express authority under the resolution of the board of directors in question to issue a warehouse receipt whereby it appeared that he had on deposit with the defendant any cotton; and, if Stone's authority was confined to such resolution, such receipt would be invalid, whether such cotton was actually deposited with the defendant or not; but that if Stone, the president of the defendant, with authority to issue receipts to himself for cotton which he had actually deposited, issued a receipt where he had not in fact deposited any cotton, the defendant would be liable to respond to a bona fide holder for value of such receipt.

The case of Hanover Nat. Bank of New York v. American Dock & Trust Co., 148 N. Y. 612, 43 N. E. 72, upon a receipt similar in form to that in the Bank of New York Case, came before the court. Judge Vann, in delivering the opinion of the court, says:

"A certificate issued by the defendant was negotiable, and a purchaser thereof for value, and without notice of any fact to put him on inquiry, was entitled to receive from the defendant the property described therein, on payment of the lawful charges." Section 6 of chapter 881 of the Laws of 1872 (the act under which the defendant was incorporated).

The court then proceeds:

"As the defendant failed to produce the goods when called for, the burden was cast upon it, prima facie, of either accounting for them or paying for them. It did

neither, but, when this action was commenced, alleged as a defense that said certificate was issued by Medad W. Stone, its president, to his own order, without any authority from the board of directors. While Stone had express authority to sign and issue warehouse receipts for cotton deposited with the defendant by persons other than himself, he had no such authority to sign or issue warehouse receipts in his own favor, even for cotton that had actually been deposited by him. As the certificate on its face gave a purchaser such notice as should put a prudent person upon inquiry in regard to Stone's authority, the plaintiff, in order to succeed, was required to show that implied authority had been conferred upon him to issue certificates to himself for cotton that he had actually deposited. If he was authorized, either expressly or impliedly, to issue certificates to himself for his own cotton on deposit, and he issued a receipt, on his personal account, for cotton not on deposit, in the language of the case last cited, 'the defendant would be liable to respond to a bona fide holder for value of such receipt.' This is upon the ground that an agent may bind his principal within the limits of the authority with which he has apparently been clothed in respect to the subject-matter."

And it was held in that case that, upon the evidence, it was a question of fact for the jury to say whether or not the defendant had, by implication, authorized Stone to sign and issue warehouse receipts for cotton deposited by himself.

The third time the question was presented to the court of appeals was on the appeal in this action from a former judgment in favor of the plaintiff; and the court of appeals again reiterated the rule before referred to, and, citing the Hanover Bank Case, the court held that acquiescence, under the circumstances then disclosed by the record, would permit the inference that Stone had implied authority to issue a certificate on his own account for cotton actually deposited by him. It was further held that in issuing the certificate in question, although for cotton never deposited, "Stone was acting within the scope of his apparent authority, so that his representations were binding upon the defendant, which thus became liable to a purchaser for value, even with notice that express authority to certify to himself had not been conferred." 149 N. Y. 180, 43 N. E. 915. The judgment was reversed, however, upon the ground that this question as to whether or not Stone had such implied authority to issue certificates to himself had not been presented to the jury, but that the case had been submitted to the jury upon a wrong theory.

It would seem that it has been settled that Stone had no express authority to issue the receipt to himself, whether he had on deposit in the warehouse cotton or not; that, upon the facts appearing in the record in the Hanover Bank Case, it was a question for the jury to determine whether he had implied authority from the defendant to issue receipts to himself upon his deposit of cotton in the defendant's warehouse. If he had such authority, and a certificate was issued by him, and purchased by a bona fide purchaser for value, such purchaser would be entitled to recover from the defendant the cotton described in the receipt upon payment of the lawful charges; and this, irrespective of the actual deposit by Stone of cotton in the defendant's warehouse. Applying these principles, it would seem that the question as to whether or not Stone had actually ever deposited any cotton in the defendant's warehouse, as indicated by the receipt in question, was entirely immaterial. If he had

implied authority to issue receipts to himself, the issuing of the receipt in question being a representation of the fact that he had the cotton on deposit, then the defendant was estopped from denying it, it being a fact within the knowledge of the agent, and not within the knowledge of the plaintiff. If Stone had authority to issue a certificate to himself of his deposit of cotton in the defendant's warehouse, and he issued such certificate, upon that certificate being presented to the plaintiff it had notice of the fact that Stone had issued a certificate to himself certifying that he had such cotton on deposit. The defendant then was bound to inquire as to the authority of Stone to issue such a certificate. If Stone actually had such authority, express or implied, such investigation would have disclosed the existence of such authority, and, if such authority existed, the act of Stone was then the act of the defendant. There is nothing in the fact of the receipt being issued by Stone to himself to call for any investigation by the plaintiff, except as to Stone's authority to issue such a receipt; and, if such authority in fact existed, then the defendant was liable for Stone's act. This we think to be the logical result of the decisions in the cases before referred to. This being so, and, upon the evidence in the case, it being a question for the jury to determine whether or not Stone had such authority, and the jury, by their verdict, having determined that he had, the defendant was clearly liable for Stone's act within the authority thus conferred upon him, and was bound to deliver to the plaintiff upon demand the cotton mentioned in the warehouse receipt. This liability of the defendant as thus expressed does not depend upon estoppel, but upon its contract, which it has made through its authorized agent, to deliver specific personal property to Stone or his transferee (the plaintiff), upon payment of charges; and when a purchaser in good faith, for value, and without notice, purchases one of such warehouse receipts, and it is transferred by indorsement and delivery of the receipt, any holder to whom the same may be so indorsed and delivered "shall be deemed and taken to be the owner of said goods, wares, merchandise property therein specified, either absolutely or as a pledge for any advance or credits on the same as the case may be, subject, however, to all charges thereon." Laws 1872, c. 881, § 6.

Now, this plaintiff, when this warehouse receipt was transferred to it by indorsement and delivery, became the owner of the cotton that the defendant, by its authorized agent, had agreed to hold for Stone or his transferee (the plaintiff), and was entitled to receive such cotton upon demand. It demanded such cotton of the defendant, and the defendant refused to deliver it; and the plaintiff sued for its conversion, demanding the value of the cotton which the defendant had refused to deliver. The action is not to recover the damages sustained by the plaintiff in consequence of any irregularity on the part of Stone in issuing the receipt, or for breach on his part of his duty, as president, to the defendant, in issuing this receipt, but to recover the value of certain specific bales of cotton which the defendant had by contract agreed to hold for plaintiff, and to deliver on demand. If the plaintiff had the right to the specific cotton, in consequence of the transfer of this receipt by indorse-

ment, then it would seem to follow that a refusal of the defendant to deliver such cotton would entitle the plaintiff to a verdict for the value of the cotton.    At the defendant's request, however, the question as to whether or not the defendant was estopped from denying the truth of the statements in the warehouse receipt,— that it had in its possession at the time of the delivery of the receipt to the plaintiff, and the payment of the amounts advanced to Stone, the specific cotton described in the receipt,—was submitted to the jury.    At the request of the defendant, the court charged the jury that:

"To recover, the plaintiff must establish to the satisfaction of the jury that on the 2d day of May, 1891, the defendant is estopped to deny that it had in its possession at such time such cotton, and also estopped to deny the plaintiff's right to the possession on or prior to that day."

Under this charge, the verdict of the jury must be deemed to have established such estoppel, and the evidence clearly sustained this verdict.    Before the plaintiff advanced to Stone anything on the faith of these warehouse receipts, its agent was sent to the warehouse of the defendant, to investigate as to whether or not the cotton as represented by the receipts was actually on deposit with the defendant.    Mead, the plaintiff's agent, went to the warehouse, and asked the person in charge about the cotton.    This person was a Mr. Jewell, who was the superintendent of the warehouse, and had general charge of it, and the custody of the property there stored. Mead gave to Jewell a memorandum containing a copy of the certificates, and said to him, "Mr. Jewell, I have come down to see if that cotton is in store."    To that Mr. Jewell replied, "Well, that cotton is here all right in store, but I cannot show it to you now, because it has an inspection number."    The plaintiff had thus done all in its power to ascertain whether or not the cotton was there.    It had no power to force its way into the warehouse, and look at the cotton, against the wish of the person in charge.    With that statement the messenger was forced to be content.    He returned to the plaintiff, and stated to its officer that "they [that is, the bales of cotton] were all right."    The criticism by counsel for the plaintiff upon this report as being a false report is not well founded.    It is true that Mead had been directed to look at the cotton, but an inspection was refused, and he could do nothing but rely upon a statement of the officer in charge that the cotton was there and all right, and to make a report to his principal, relying upon that statement.    As before stated, Mead had no authority to force his way into the warehouse of the defendant, against the wish or direction of the person in charge.    All the information that he could obtain about the cotton was such information as the officers or employés of the defendant were willing to give; and when they refused to permit an examination, but made a statement to him that the cotton was there and all right, the plaintiff had done all that it could do to ascertain whether or not the cotton was there subject to their call; and, having received this assurance that it was there from a responsible officer of the defendant, it was entitled to rely upon that statement.    It

was upon that statement that the plaintiff relied and paid the
money to Stone. The situation was that the defendant had made an
agreement with Stone that it had on storage certain bales of cotton
which it agreed to deliver to Stone on demand. Stone had transfer-
red the title to the cotton, and the right to enforce the certificate to
the plaintiff for a valuable consideration, who thereby became the
owner of the cotton. The defendant was estopped from denying the
fact that Stone had on deposit with the defendant, at the time of the
transfer of the certificate to the plaintiff, the cotton called for by
the warehouse receipt. Thus, the plaintiff's cause of action was com-
plete, and clearly, within the principles established by the court of
appeals in the cases before cited, it was entitled to a verdict for the
value of the cotton at the time of the refusal to deliver on demand.
The court having at the defendant's request submitted this question
to the jury, and based the right of the plaintiff to recover upon the
establishment of the estoppel, the defendant cannot now insist that
the action was submitted to the jury upon a wrong theory.

There are many exceptions by the defendant to the refusals of the
court to charge, and to the charge as made, and to the rulings upon
the evidence, which it is impossible to notice in detail. We would
say, however, that we are satisfied that all of the dealings between
Stone and others, whereby he assumed to act on behalf of the de-
fendant, and the fact that such dealings were entered in the books
of the defendant, were competent evidence as against the defendant
upon the question of Stone's implied authority to act for the defend-
ant, and issue these certificates. The fact that he had before issued
certificates to himself which were entered in the books of the de-
fendant, and which were recognized by the defendant and its officers
as valid, was competent evidence to prove the authority of Stone to
act for the defendant, and, in connection with such evidence, the de-
gree of the control of the business of the defendant, which was left
to Stone. The neglect of the directors or other officers of the de-
fendant to in any way supervise his actions while dealing with oth-
ers, the authority to act for the corporation, which he assumed and
exercised, with the acquiescence of the directors of the defendant
corporation, together with his general relation to the corporation
itself, were all competent evidence to show just what implied au-
thority had been granted to Stone by the corporation; and the jury,
passing upon the question of Stone's implied authority, were bound
to consider all of the evidence bearing upon the subject. There was
no error, therefore, in the admission of evidence as to Stone's re-
lation to the company, or as to the acts that he did on behalf of the
company and the acts of the company in voluntarily surrendering in-
to the hands of Stone the actual control and management of all the
company's business.

The other objections taken by the defendant to this recovery, and
the exceptions taken upon the trial, have all been examined. We
are satisfied, however, that applying the principles established by
the court of appeals in the cases before cited, and accepting the
verdict of the jury upon the disputed questions of fact, which was

clearly sustained by the evidence, the verdict of the jury was right, and the plaintiff is entitled to recover; and no error was committed that would justify us in reversing this judgment.

The judgment and order appealed from are therefore affirmed, with costs. All concur.