whole amount which she has received. If a less rigid doctrine could obtain than the authorities would seem to indicate, it nevertheless is clearly apparent that in this action the plaintiff may impose a burdensome litigation upon the defendants, without in the end any possibility upon their part of receiving the fruits of the judgment which they might succeed in obtaining. As they may show themselves entitled to receive the whole sum which has been paid, and as the plaintiff may not certainly retain the same, dependent upon the contingencies of the action, it would seem that equity required that the plaintiff should place within the power of the court the means of satisfying any judgment which they may recover, to the extent of the sum of the purchase price of plaintiff's remainder. If the plaintiff is unable to restore that which she has received, it is a misfortune, but of a kind which the court is powerless to relieve. Curtiss v. Howell, supra. Under such circumstances she may be relegated to other remedies. Gould v. Bank, 99 N. Y. 333, 2 N. E. 16; Vail v. Reynolds, supra. Upon the present facts, however, as the sum which the plaintiff has received was not in legal effect any part of the moneys or property of the estate, but was purely the purchase price of her interest therein, we think that equity requires the deposit of the sum which she has received. If we are correct in this view, it follows that the judgment should be affirmed.

Judgment affirmed, with costs. All concur.

---

(29 Misc. Rep. 467.)

WESTERN NAT. BANK v. FABER.

(Supreme Court, Trial Term, New York County. November, 1899.)

1. JUDGMENT—RES JUDICATA.
    The decision of a question by the appellate division of the supreme court is conclusive on a justice thereof sitting at trial term.

2. CORPORATIONS—ANNUAL REPORT—DIRECTORS—PERSONAL LIABILITIES.
    Under Laws 1892, c. 688, providing that the directors of a corporation shall be personally liable for its debts if they do not annually file a statement verified by the president or vice president and treasurer or secretary, the fact that defendant, who had been one of the officers of the corporation, had resigned such office before the filing of an insufficient report, did not relieve him from liability, where he continued to be a director.

3. SAME—CORPORATE NOTES—OFFICERS—PAYMENT OF PERSONAL DEBTS.
    Where a corporation was in the habit of making notes payable to the order of its president, and such notes were paid by the corporation at their maturity, and held by it as canceled obligations, notes payable to the order of the president, and discounted by him at a bank, and the proceeds passed to his credit, are not invalid on their face, but are valid in the hands of an innocent purchaser for value.

4. SAME—ANNUAL REPORT—PRESUMPTION.
    Laws 1892, c. 688, § 30, requires corporations during the month of January to make and file a report as of the 1st day of January, showing the condition of their business, and for failure to file such report makes all the directors jointly and severally liable for all corporate debts then existing, and contracted before such report shall be made. A corporation filed a report for the year 1893, stating the amount of its capital stock and its assets and liabilities, but did not in terms state that such facts referred to its condition on the 1st day of January, 1893. The report was

dated January 25, 1893, and was filed January 31, 1893. *Held*, in the absence of evidence of bad faith on the part of the corporation's officers, it would be presumed that the report referred to the corporation's condition on January 1, 1893, and hence the directors were not personally liable on notes made subsequent thereto.

5. SAME—NOTES—INDORSEMENT.
    Where a corporation at a time when it was in default for failing to file its annual report indorsed a note which did not fall due until after the corporation's next annual report had been filed, the directors are not personally liable thereon, as the liability on the note did not become a debt until after default by the maker and notice to the indorser.

6. SAME—NOTES—INTEREST.
    Under Laws 1892, c. 688, § 30, rendering the directors of a corporation jointly and severally liable for corporate debts, for failing to file an annual report as required, one recovering judgment against a director on a corporate debt, by reason of the corporation's failure to file the annual report, is entitled to interest on his claim.

Action by the Western National Bank against Eberhard Faber on notes executed by a corporation of which defendant was a director. Judgment for plaintiff.

Charles E. Hughes and Marshall B. Clarke, for plaintiff.

Benjamin F. Tracy, Francis Forbes, and Charles T. Haviland, for defendant.

LAWRENCE, J.    The decision of the appellate division of this court in Manhattan Co. v. Kaldenberg, 27 App. Div. 31, 50 N. Y. Supp. 265, that the report of 1892 was not in compliance with the provisions of the stock corporation law, because not verified by two officers of the company, either the president or vice president, together with either the treasurer or secretary, is conclusive upon a justice of this department sitting at trial term, and I must therefore hold that such report is invalid for that reason.    I am of the opinion that the evidence for the defendant establishes that he resigned as secretary and treasurer of the F. J. Kaldenberg Company upon his return from Europe, on the last of October or the beginning of November, 1891.    But it is also held in the Manhattan Case, supra, that, where the by-laws of a stock corporation expressly declare that it shall have a secretary and treasurer, the neglect of its directors to select such officers does not exempt them from liability for a penalty incurred by the failure to file a legally executed report.    Under that decision it therefore follows that it is immaterial whether the defendant resigned the office of secretary before making that report.    He continued to be one of the directors of the company, and therefore was liable under the statute for all debts of the company which then existed, and for all contracted before such report should be made. Stock Corporation Law, § 30; 2 Laws 1892, p. 1832.    If, then, any of the notes in suit were debts of the corporation contracted before the filing of the report of 1893, the plaintiff, if entitled to a recovery in this action, is entitled to recover the amount of such notes.

It is claimed by the defendant's counsel that the note (Exhibit C) for $4,500, dated December 15, 1892, and the two notes for $1,500 each, one dated March 13, 1892, and the other April 1, 1893 (Exhibits G and H), were invalid on their face, because made payable to

the order of F. J. Kaldenberg, president of the company, for whom they were discounted, and to whose credit the proceeds were placed. The only difference in the notes is that while Exhibits G and H are signed by F. J. Kaldenberg as president, as well as payable to his order, the note for $4,500, although payable to his order, is not signed by him as president, but by the vice president and treasurer of the company. As all were payable to his order, they must stand or fall together, in determining whether the company is liable for their amounts to the plaintiff. The rule, of course, is that one who receives from an officer of a corporation its notes or securities in payment of or as security for a personal debt of the officer does so at his peril, and that prima facie the act is unlawful, and unless actually authorized the purchaser will be deemed to have taken with knowledge of the rights of the corporation. Wilson v. Railroad Co., 120 N. Y. 145, 24 N. E. 384; Cheever v. Railroad Co., 150 N. Y. 59, 60, 44 N. E. 701, 34 L. R. A. 69; Hanover Nat. Bank v. American Dock & Trust Co., 148 N. Y. 612, 613, 43 N. E. 72. But this rule is subject to the qualification that one who purchases negotiable paper under circumstances throwing upon him the duty of making inquiry as to its validity assumes no greater risk by his failure to inquire than the burden of proving that the facts which he could have discovered, had he inquired, would have protected him. Hanover Nat. Bank v. American Dock & Trust Co., 148 N. Y. 612, 613, 43 N. E. 72; Wilson v. Railroad Co., 120 N. Y. 145, 24 N. E. 384. Now in this case it was admitted upon the trial that the defendant made no question as to the power of the president, vice president, and treasurer to make notes of the company payable to F. J. Kaldenberg's order. It also appears that the making of such notes was of frequent occurrence. The plaintiff put in evidence more than 30 notes, all drawn to the order of F. J. Kaldenberg, running from April 16, 1891, to November 11, 1892 (Exhibits C1 to J1). They were obtained from the receiver of the company, and had been paid by the company. These notes were signed, as was the custom of the company, by the president and treasurer, and sometimes by the vice president and treasurer; and they were all made before any of the notes which are the subject of this litigation. It seems to me, therefore, that under the rule above stated the plaintiff, in discounting the notes,—nothing being shown casting a suspicion on the good faith of its officers,—is protected from any claim which might be made that the making of the notes was unauthorized by the Kaldenberg Company. If special inquiry had been made by the plaintiff, it would have discovered that the F. J. Kaldenberg Company was in the habit of making notes payable to the order of F. J. Kaldenberg; that such notes were sometimes signed by the president and treasurer, and sometimes by the vice president and treasurer; that these notes had been apparently paid by the company, and were held by it as its canceled obligations; and that the instances in which this had occurred were frequent. The evidence also, in my opinion, establishes that the company received the proceeds arising from the discount of the notes. Such inquiry would therefore have revealed a course of dealing on the part of the Kaldenberg Company which would protect an innocent pur-

chaser for value in discounting the notes, or in receiving them as security for other indebtedness. Hanover Nat. Bank v. American Dock & Trust Co., 148 N. Y. 612, 613, 43 N. E. 72; Grant v. George C. Treadwell Co., 82 Hun, 591, 31 N. Y. Supp. 702. I think, therefore, that Exhibits C, F, and G have been established by the evidence to be obligations whose validity the Kaldenberg Company cannot deny. As to the three remaining notes (D, E, and F), it was also admitted by the defendant's counsel that they were proven to have been duly indorsed, and I find that it was proven by F. J. Kaldenberg's testimony that the proceeds of those notes were received by the company. It is true that the witness, in a portion of his testimony in regard to some of the notes in suit, stated that he was speaking of those notes from his best recollection; but, as no evidence was given contradicting him as to the application of the proceeds of the notes, I am of the opinion that it was prima facie established that the company received the moneys obtained on the discount. The notes Exhibits E, F, G, and H, bearing date respectively February 16, 1893, February 18, 1893, March 13, 1893, and April 1, 1893, were all made and discounted after the date and filing of the report of 1893. It follows, therefore, that if that report was valid the defendant cannot be held liable upon those notes. The only objection which is taken to that report, if I understand the brief presented by the plaintiff's counsel, is that it is invalid because it does not in terms or by necessary implication state that it was made as of the 1st of January, 1893. It is conceded that at the date of the making of the report of January, 1893, to wit, January 25th, and of its filing on the 31st of January, 1893, and the 1st of February, 1893, chapter 688 of the Laws of 1892, amending section 30 of the stock corporation law, which required that the report should be made as of the 1st of January, was in force. That section, so far as it relates to this case, reads as follows:

"Sec. 30. Annual Report.—Every stock corporation, except monied and railroad corporations, shall annually, during the month of January, or, if doing business without the United States, before the first day of May, make a report as of the first day of January, which shall state: 1. The amount of its capital stock, and the proportion actually issued. 2. The amount of its debts or an amount which they do not then exceed. 3. The amount of its assets or an amount which its assets at least equal. Such report shall be signed by a majority of its directors, and verified by the oath of the president or vice-president and treasurer or secretary, and filed in the office of the secretary of state and in the office of the county clerk of the county where its principal business office may be located. If such report is not so made and filed, all the directors of the corporation shall jointly and severally be personally liable for all the debts of the corporation then existing, and for all contracted before such report shall be made." 2 Laws 1892, p. 1832.

It will be observed that the report as filed in the offices of the secretary of state and county clerk does not in express terms refer to the 1st of January preceding as the date at which the statements contained in the report are to be deemed as made. Does it by fair implication do so? The report purports upon its face to be the annual report of the F. J. Kaldenberg Company, a company organized under the laws of the state of New York, for the year 1893. See plaintiff's Exhibit R. As before stated, the only objection made to the report by counsel is that it does not speak of the condition of the

company as of the 1st of January, 1893. The statute requires the report to be made annually during the month of January as of the 1st day of January. The report was dated January 25th, and was therefore made within the month prescribed by the statute. It was filed in the office of the secretary of state January 31, 1893, and in the office of the clerk of Westchester county February 1, 1893. The omission to file the report in the county clerk's office before February 1, 1893 (it having been made and verified by the president and treasurer of the company during the month of January, and filed with the secretary of state on the 31st of January, 1893), does not affect the validity of the report. Cameron v. Seaman, 69 N. Y. 396. There is nothing in the testimony which shows that the defendant and the other directors of the company acted in bad faith in making this report, and in the absence of such evidence it must be assumed that they were endeavoring to comply with the provisions of the law, and that the report was intended by them to speak as of the 1st of January, 1893. Arms Co. v. Barlow, 63 N. Y. 62, and particularly the remarks of Allen, J., at page 67; Wallace & Sons v. Walsh, 125 N. Y. 26, 25 N. E. 1076, 11 L. R. A. 166, opinion of Ruger, C. J., at page 33, 125 N. Y., page 1076, 25 N. E., and page 167, 11 L. R. A. The statute, as has been uniformly held, is penal in its nature, and should be strictly construed. Whitaker v. Masterton, 106 N. Y. 277, 12 N. E. 604; Bonnell v. Griswold, 80 N. Y. 128; Pier v. Hanmore, 86 N. Y. 95. The defendant should not, in my opinion, be subjected to the severe penalty imposed by the statute, unless the report, by fair construction, fails to comply with the statutory provision. It is said that the report does not, by fair construction of the words used in it, comply with the statute requiring it to be made as of the 1st of January, 1893, because the statements in it necessarily relate to the date of the report. The report states (1) that the capital stock of this company is $500,000; (2) the existing debts of the company do not exceed $285,000; (3) the amount of its assets at least equals $750,000. Is it not a fair implication that the language thus employed was intended to relate to the time referred to in the statute, to wit, January 1, 1893?—the report purporting to be made for the year 1893, and having been made and filed within the time required by the statute; there being nothing to show that the capital of the company had been increased or decreased, nor that the debts or assets had been either increased or decreased, intermediate the 1st of January and the date of the report, except by the note for $1,307.29 (Exhibit D), on which the company might become liable as indorser, which question will be hereafter considered. See 2 Laws 1892, p. 1832. It is claimed by the plaintiff's counsel that the decision of the appellate division of this court in Grocery Co. v. Pratt, 36 App. Div. 152, 55 N. Y. Supp. 467, is directly in point, and that under that decision the report of 1893 is fatally defective because it does not state that it was made as of the 1st day of January of that year. In the opinion of the court in that case there is much stress laid upon the fact that as the report then under consideration spoke of the year ending December 31, 1891, it was plain that it gave the condition of the company as it existed on the 1st of January, 1892; but it is also

stated by the learned justice who delivered the opinion that the statute requiring corporations to make a report as of the 1st day of January prescribed no formula on this head, and that it is not required to state literally in the precise words of the statute that the report is made as of the 1st day of January; that "the statute is complied with when by fair intendment the report speaks as of the prescribed date." In Arms Co. v. Barlow, 63 N. Y. 67, which was an action against trustees for failure to file a report, the case arose under the act of 1848 as amended by the act of 1853; and the court held that the report which was "made and filed, professedly in compliance with the statute, in the absence of any evidence of an attempt to deceive, or evade the statute, would receive a liberal interpretation, and the benefit of any doubt as to its true intent and meaning would be given to the trustees sought to be charged." It has never been questioned, so far as I am aware, that that case lays down the correct rule for the guidance of those seeking the proper construction of statutes of this nature; and under it I think that as the report of 1893, involved in this case, should be fairly construed as speaking of the condition of the company as of January 1st of that year, I must hold that the four notes (Exhibits E, F, G, and H), all of which were made after the making of the report, are not debts of the company for which defendant can be held liable. It remains, then, to consider, as the defendant is liable on the $4,500 note (Exhibit C), which was made while the default under the report of 1892 existed, whether he is liable for the amount of the note of J. & M. Sanson for $1,307.29. That is Exhibit D. Its date is January 7, 1893. It was indorsed by the company, and was discounted by the plaintiff January 9, 1893. It matured May 10, 1893. It is claimed by the defendant that as the company was an indorser only of the note, and default in its payment had not occurred when the report was made, it was not then an existing debt of the company. This answer seems to be conclusive as to the plaintiff's right to recover upon that note. The indorser does not become liable on a note until the maker of it has failed to pay it at its maturity, and notice to the indorser has been given of such failure. If these views are correct, the plaintiff can only recover on the $4,500 note (Exhibit C), which was made by the company while the default under the defective report of 1892 continued. It is objected by the defendant that interest cannot be allowed on that amount, because this is an action to recover a penalty. Interest has always, I believe, been allowed in such cases, and no case is cited to the contrary by the defendant. Judgment accordingly.