# SUPREME COURT.

FRELING H. SMITH, as receiver, &c., agt. SIMON DANZIG *et al.*

*Corporations — Directors when and under what circumstances may resign — When and how such resignation becomes effective — Rule eighty-one — Receiver of a corporation may be appointed in a judicial district, other than the one where its office and business is located — Motion for removal of receivers &c., should be made in district where he was appointed.*

The directors of a corporation, when they find that the corporation is insolvent; that its affairs are growing worse every day; that the danger is imminent; that the remaining property will be wasted, leaving the bulk of its creditors unpaid, may lawfully resign for the purpose of securing a fair and equal distribution of the corporate property among its creditors, and such resignation becomes effective to vacate the respective offices without any affirmative act of the corporations.

A receiver may be appointed in an action brought in the second judicial district by a stockholder residing there, of a corporation having its office and place of business in the first judicial district.

And this is so, notwithstanding the provision of rule eighty-one of the general rules of practice that "such appointment must be made in the judicial district in which the principal place of business of such corporations is situated."

The supreme court is an entire tribunal, and whenever a suitor in pursuance of a statutory right invokes its powers, it is bound to perform its duties, and if the appointment of a receiver happens to be a part of its duty, it is not the office of a mere rule to abridge its powers or work a denial of justice in the premises.

A rule of court, in order to be valid, must be consistent with the Code, and rule eighty-one is not in harmony with the statutory right of a party to locate the venue of his action in the county where he resides.

If any complaint is to be made against a receiver it should be made in the action and district in which he was appointed.

*Special Term, January*, 1883.

THIS is a motion to make the injunction permanent against Danzig's action in New York, and for instructions to the receiver.

*John L. Hill* and *L. W. Emmerson*, for plaintiff.

Smith agt. Danzig *et al.*

*Hon. B. F. Tracy, Hon. John J. Adams, E. W. Bloomingdale, Alex. Blumenstiel, S. F. Kneeland, Fred. G. Anderson, M. H. Ellis,* for judgment creditors, opposed.

*Isaac L. Miller,* for Jaffrey & Co.

*Charles E. Lydecker,* for Eddy, judgment creditor.

*W. I. Washburne,* for a judgment creditor, claiming a preference.

*Rastus Ransom* and *Mr. Clinch,* for stockholders.

*S. F. Prentiss,* for the corporation, also appeared and asked to have the injunction and receivership continued.

PRATT, *J.*— In order to arrive at a clear understanding of the matters involved in this motion, it is necessary to make a somewhat extended statement of the facts.

On the 26th of December, 1882, the plaintiff was appointed receiver of the Co-operative Dress Association, a domestic corporation of the limited liability class, under an act of 1875, located in the city of New York, in an action brought by one Coles, a stockholder, on the ground that no officer remained empowered to hold or preserve its property. The plaintiff qualified and took possession of the property of the company, which consists of a large stock of dry goods, dresses, suits, &c., a very large proportion of which depends upon style and season for the realization of any fair approximation of their cost or value. The corporation is insolvent, and its property must in some way be taken by its creditors. Hence, it is obvious that the goods cannot be sold at retail, as the company intended when it purchased them, and they must therefore be sold to the best advantage consistent with the preservation of the rights of all concerned. On the twenty-third of December one Schuloff obtained an attachment, in each of two actions, in this court, to secure an aggregate sum of about $5,000, and caused the same to be levied on the silks and

velvets in said stock, which cost and were inventoried at some $21,000. A motion is now pending in the first district to vacate that attachment, the corporation denying any liability to Schuloff, except for immature indebtedness.

On the twenty-seventh of December the defendants, Nicholas, Myers, Danzig, Eddy and others, recovered judgments against the company for various sums, which were duly docketed in New York county, and upon which executions were duly issued to the sheriff. Eddy's execution was returned on the twenty-eighth day of December, and he thereupon instituted a suit for the sequestration of the said property, pursuant to the statute. On the thirtieth of December the plaintiff was appointed receiver in that action and duly qualified. On that date the Danzigs, upon leave granted by this court in the first district, commenced an action as judgment creditors, in that district, in behalf of themselves and others in like situation, alleging that the plaintiff's appointment in the Cole action was collusive, irregular and void, constituted an obstruction to their execution, and asked for the appointment of a receiver of the property. They also obtained a temporary injunction restraining the plaintiff from any interference with the said property, except to preserve the same.

It is evident that this injunction was obtained under at least this misapprehension, viz., that the plaintiff intended to make some disposition of the property beyond its mere preservation. It now appears, too plainly to admit of controversy, that no such thing had ever been attempted, and had not even been considered, except as a matter to be recommended to the court for its action. The said action in the first district, if meritorious at all, must therefore be justified on some other ground. On the third day of January the plaintiff presented the fact of the Danzig suit to this court in the Cole and Eddy actions, and was instructed to bring an action to enjoin the prosecution in the Danzig suit, and in pursuance of such instructions he has commenced an action, and the court has restrained Danzig and the other judgment creditors who may

Smith agt. Danzig *et al.*

join therein, and the present application is to continue that injunction.

On the third of January, on the application in the respective suits of Cole and Eddy, a general injunction was granted against suits for the recovery of money and other actions. On the sixth of January the plaintiff applied to this court in the three actions named, the Cole, Eddy and receiver's action against the judgment creditors, for instructions, and upon notice to the Danzigs in these actions, asked for leave to sell the merchandise, &c., on the ground that the property is liable to rapid deterioration, and that its preservation involves great expense. It is apparent that the danger from this cause is very great, and that such sale should be made unless imperative legal difficulties intervene. All the parties who were heard in court concur in this necessity.

It is claimed that the entire question turns upon the validity and propriety of the plaintiff's appointment as receiver. It is conceded that if the plaintiff is receiver in fact and in law, all the other supposed objections will be found resolvable under the practice applicable to such cases.

First, then, of the exigencies under which the officers resigned and the resulting necessity for the receivership.

Referring to the complaint in the Cole's action, we find a distinct allegation of insolvency, in that the directors had determined that the property should immediately be placed in the hands of a receiver.

It is plain that prior to the directors attempting to resign the company had become insolvent. Numerous suits were pending against the company, aggregating nearly $40,000, to which there was no meritorious defense.

The company was under very heavy expenses for employes, and was doing a losing business, and this exigency was presented to the board of directors; that judgments would be recovered and the property would be sold out under executions satisfying but a small portion of the liabilities of the company, and leaving all the other creditors without any

remedy except possibly a suit against the stockholders for the satisfaction of their claims.

It is therefore plain that the determination of the directors was in the interest of all the creditors without distinction. Indeed it was their clear duty to accomplish an equal distribution of all the property of the corporation if it could be legally and properly done

This was the policy of the law. Unlike the case of individuals, insolvent corporations are forbidden by law to grant preferences to any creditors. They are forbidden from making assignments, partly for that reason and in part because that involved the selection of their own trustee, and so working out indirectly that which they are forbidden to do directly (15 *Barb.*, 62; 33 *N. Y.*, 95).

But, strangely enough, while this general policy is perfectly clear, the provisions of the new Code are somewhat obscure as to the means by which this general object is to be accomplished. For example, so long as corporate property remains in the hands of its officers it is liable to levies under attachment or execution. Thus creditors whose debts happen to be due may take all the property. Fortunate or favored parties, through the useless sacrifices and delays which usually and necessarily attend a sheriff's sale, may wholly defeat the general creditors and subject them to needless loss. Even in cases where the application is made by the directors for voluntary dissolution under section 2419, any creditor who recovers a judgment without the assent of the corporation (*sec.* 2430) will take the property because this court has held that in such a proceeding a temporary receiver cannot be appointed (*Ex parte French Manfg. Co.*, 12 *Hun* 488; *see case of Open Board of Brokers, per* LAWRENCE, *J., N. Y., spl. term, April*); and that the only receivership authorized by law was by final judgment, which "must be not less that three months after the commencement of the proceeding" (*Sec.* 2423 *and sec.* 2429). It is needless to add, that under the peculiar circumstances of this case, as disclosed by the papers in the

Smith agt. Danzig *et al.*

Cole's suit, there being nearly $40,000 of suits pending against the corporation, any such effort to obtain a receivership would have been useless. The corporation would have been been stripped so that the receivership would have been a meaningless formality.

To have remained in office if they could have legally resigned in the face of such consequences, as were impending on the day the directors resigned, would have been a responsibility which they might justly seek to avoid.

It being clearly established that the motive and purpose of the resignations in question were proper, it seems to me that under the authorities the directors could lawfully resign, and that such resignation became effective to vacate the respective offices without any affirmative act of the corporation (12 *Hun*, 613, *affi'd*, 63 *N. Y.*, 624; 14 *Hun*, 492; 81 *N. Y.*, 46 *and* 49).

The Eddy action stands upon quite a different basis. The latter is an action clearly within the provisions of the statute, and under which the fund may certainly be distributed among the creditors of the corporation, unless the appointment of the plaintiff in this suit is invalid by reason of rule eighty-one.

This rule in my view presents no difficulty or even embarrassment.

This action belongs to the class specified in section 984 of the Code, which, subject to the power of the court to change the venue, "must be tried in the county in which one of the parties resided at the time of the commencement thereof."

The plaintiffs, Cole and Eddy, resided in Brooklyn at the commencement of each of these actions, and therefore had a *statutory right* to bring the actions in Kings county.

It was a proper venue, and the court cannot, under the statute, compel any change of venue for any cause that now appears.

In such an action, thus properly located in Kings county, a motion for a receiver or any other relief could not have been made in the first judicial district (*Sec.* 769, *new Code*).

A rule of court, in order to be valid, must be consistent with the Code, and it seems to be clear that rule eighty-one is not in harmony with the statutory right of a party to locate the venue of his action in the county where he resides. A bare statement of the proposition is sufficient to show the invalidity of the rule (55 *N. Y.*, 524; 14 *Abb. Pr.* [*N. S.*], 124; 64 *N. Y.*, 120).

It should not be forgotten that this matter relates to mere venue. That the supreme court is an entire tribunal, and that whenever a suitor, in pursuance of a statutory right, invokes its powers, it is bound to perform its duty, and if the appointment of a receiver happens to be a part of its duty, it is not the office of a mere rule to abridge its powers or work a denial of justice in the premises.

If these views are correct, it follows that the plaintiff's appointment was regular and valid, and that he took such rights as the statute conferred upon him under such appointment It seemed to me that the plaintiff took title to the property, and that the corporation ceased to own it.

He was appointed to protect and preserve the property at the suit of a stockholder (*subd.* 3, *sec.* 1810 *of Code*), and he holds the title until a court of equity in that action shall determine the question touching the fund, and make a final order in the premises (*Mickles* agt. *Rochester City Bank*, 11 *Paige R.*, 118).

It is not necessary to discuss the question raised by the plaintiff's counsel, whether the allegations in the suit of *Danzig* agt. *Smith* are sufficient to give a standing in a court of equity, the Cole action having been first commenced. A just and proper administration of affairs will not favor actions instituted in other districts wherever it may suit the caprice or interest of a disappointed creditor to test the validity of the appointment of the present receiver.

If any complaint is to be made it should be in the action and district in which he was appointed (*Rinn* agt. *Astor Fire Insurance Company*, 59 *N. Y.*, 143; *In re Atty.-Genl.* agt.

*Guardian Ins. Co.*, 77 *N. Y.*, 72; *and opinion of general term, fourth Sept., in same case; see, also, Atty.-Genl.* agt. *North America Life Ins. Co., per* WESTBROOK, *J., Ulster special term*, 1879).

But assuming that the contention of the defendant Danzig and the other judgment creditors is sound, and that he having issued an execution prior to plaintiff's appointment in the Eddy suit, he thereby has an absolute lien and is entitled to a preference over all other creditors, and assume, further, that all the judgments obtained prior to the plaintiff's appointment in the Eddy suit, together with the attachments of Schuloff, constitute liens upon the property, does that furnish any argument why the temporary injunction issued herein should be dissolved?

The case would then be that a few creditors representing a small proportion of the indebtedness of the corporation claiming the right to sacrifice all this property to the detriment of the interests of the other creditors and stockholders. A court of equity should protect the interests of the general creditors and stockholders, if it can be done without injury to the judgment creditors (assuming that they have such lien) by an immediate sale of the property and a stoppage of the running expenses, thus obtaining a large fund for general distribution.

It is for the interest of all creditors that the property should bring as much as possible, and the proof is abundant and conclusive that the quicker a sale can be made the more the property will bring.

It is therefore proper that the property should be immediately sold, the fund which it shall bring upon such sale should be substituted for the property itself, and if Danzig, Schuloff and others should have any valid lien thereon, it can be established and settled in the present action. It follows from these views that the injunction should be continued until final judgment in this action.

The next question to be considered is that relating to the

plaintiff's application for instructions upon notice to the Danzigs in this action and in the Eddy & Cole's actions as well.

The power of the court to make a sale of the property is undoubted. Independent of any statute a court of equity has inherent power to direct such a disposition of the fund as it shall deem wisest and best for the interests of all concerned. But under the statute the power is clear (*secs.* 1788, 1789 *of the Code*); for although it may be fairly argued that the statute does not in terms apply to the Cole's case, it certainly applies to the Eddy case, which is strictly within article 3 of title 2 of chapter 15.

It will be noted that the exercise of the power of sale in the Eddy action does no harm to any judgment creditor whose execution was issued before the plaintiff's appointment in the Eddy suit, because, by reason of the plaintiff's title in the Cole suit, a fund was brought into court in Cole's suit and sold. No lien or title was acquired by or through the sheriff under execution. But, even if Danzig has a lien, it can be proved, as I have before indicated.

The order of sale should be entitled and entered in all the actions, and the receiver should have power to sell upon such terms as he shall deem best.

It seems that he is aided by a committee of experienced merchants, each of whom is interested to secure the very best price for the property, and any limit upon his power of sale, whether it be exercised through or in consequence of bids under his advertisements, or at auction through some reputable auctioneer or commission house, can only embarrass and tend to defeat the end in view.

If, however, the receiver should refuse to comply with the just demands of the creditors having any considerable claim against the said corporation, in regard to the form or terms of sale, a special application may be made to the court upon one day's notice to the receiver. The proceeds of the sale should be immediately deposited in some trust company,

which will pay the best interest on the deposit, to the credit of the receiver to be drawn upon the order of the court in the Cole and Eddy actions. The sale should be absolutely without prejudice to the right of any creditor, and the order should provide that each creditor should have the same rights in the fund which he now has in the property.

The matter of Schuloff's attachments can scarcely present any serious difficulty. The Eddy and Cole suits are brought for the benefit of all concerned; and Schuloff, even although not strictly a party on the record, is nevertheless and in fact a party, because he is a creditor (*Attorney-General* agt. *Guardian Ins. Co.*, 77 *N. Y.*, 272, 277), so that he is enjoined by the general injunction which has been entered under section 1806, and it appears that he has appeared in these actions and made a motion to modify that injunction. It is scarcely conceivable that any real difficulty · can arise between the receiver and parties who simply desire the protection of Schuloff's rights under the attachment; but as against that contingency the order may provide that the receiver may, if necessary, procure sufficient advances on the goods which have not been attached to meet any exigency of the case, and, out of those amounts he may make special deposits or otherwise exercise the rights and privileges of the corporation, as defendant in the attachment suit, to procure the discharge of the attachment, and so realize and procure the sale of those goods.

The receiver should also commence proceedings to vacate and discharge the attachment, and for that purpose and to that extent the general injunction against suits, &c., may be modified so that either party to that suit may present their proofs touching the attachments; but in all other respects the injunctions should remain.

The order should also provide that the receiver, upon a copy of the papers in this action, and a copy of the order to be entered herein, shall make special·application to this court in the Danzig action, in the first district, for the purpose of

Smith agt. Danzig *et al.*

permitting a sale and disposition of the property herein directed to be sold, so that the proceedings in these actions may be harmonious, and the rights of all parties be protected and preserved.

Now, in considering the questions involved herein, I have given the subject all the care that my limited time and other pressing duties would permit, and I am deeply impressed with the idea that if it shall be determined that the directors of a corporation, when they find that the corporation is insolvent; that its affairs are growing worse every day; that the danger is imminent; that the remaining property will be wasted, leaving the bulk of its creditors unpaid — if they cannot under these circumstances resign for the purpose of securing a fair and equal distribution of the corporate property among its creditors, then the subject imperatively calls for legislative action. But, even should it be held, as I think it must be, that they can resign under such circumstances, yet one or more stubborn or dishonest directors might defeat this action.

The decision of these motions, however, does not depend upon the power of the trustees to resign, as the receiver is in possession of the property under his appointment in the Eddy action as well as in the suit of Cole, and the whole controversy turns upon the question as to the right of the judgment, attaching and general creditors, and these questions can and should be all determined in the action now pending in this district.