HERBERT NOBLE, as Assignee for the Benefit of Creditors of SUMWALT & JONES, Appellant, *v.* HENRY C. EULER, Respondent.

*Corporation — annual report of a corporation verified by the president only, when sufficient — acceptance of a resignation not essential to its effectiveness.*

Where the treasurer and secretary of a corporation has tendered his resignation, and the president of the corporation, pursuant to its by-laws, has exercised the duties and functions of treasurer and secretary, the filing of a report conforming in all respects to the requirements of section 30 of the Stock Corporation Law (Chap. 688, Laws of 1892), except that it is verified by the president alone, instead of "by the oath of the president or vice-president and treasurer or secretary," as required by the statute, constitutes a substantial compliance with the statute, and an action brought under that section to charge the directors of the corporation with liability for its debts, based upon the theory that there was a failure to file a report, cannot be maintained.

The fact that the resignation of the treasurer and secretary was not formally accepted until after the filing of the report is immaterial, as the acceptance of a resignation is not essential to its effectiveness.

APPEAL by the plaintiff, Herbert Noble, as assignee, etc., of Sumwalt & Jones, from a judgment of the Supreme Court in favor of the defendant, entered in the office of the clerk of the county of Westchester on the 25th day of May, 1897, upon the report of a referee.

*William H. Page, Jr.,* and *Edward J. Gavegan,* for the appellant.

*Jesse Johnson* and *Bernard J. Isecke,* for the respondent.

PER CURIAM:

This action was brought to charge the defendant with liability as a director of the F. J. Kaldenberg Company, for a debt of that corporation, on account of its failure to file the annual report required by section 30 of the Stock Corporation Law (Laws of 1892, chap. 688).

The corporation did file a report in the proper offices within the time prescribed by the statute; but the plaintiff contends that this document is to be deemed a nullity, because it was verified by the oath of the president only, and not also by that of the treasurer or secretary.

The office of treasurer and secretary of the F. J. Kaldenberg Company was vacant at the time when the report was made, in January, 1892, by reason of the resignation of the treasurer and secretary in the month of November, 1891. Although this resignation was not formally accepted until February, 1892, the referee correctly held that it became effective when tendered in the previous November. It also appeared that after the resignation and at the time when the annual report was made and filed, the president of the corporation exercised and discharged the duties and functions of treasurer and secretary pursuant to the by-laws. When the report was made, therefore, the person who verified it was to all intents and purposes the president, secretary and treasurer of the F. J. Kaldenberg Company; and the single verification by him, although it referred only to his office as president, was a substantial compliance with the

requirements of the Stock Corporation Law that such report should be "verified by the oath of the president or vice-president and treasurer or secretary."

This is the result reached by the learned referee, whose reasoning is so convincing, and whose conclusions are so fully sustained by the authorities which he cites, that we are quite content to base our affirmance of the judgment upon his opinion on this branch of the case.

We do not deem it necessary to decide the question which he also discusses, as to the application of the Statute of Limitations.

All concurred.

Judgment affirmed, with costs.

The following is the opinion of the referee :

ALMET F. JENKS, Referee :

Plaintiff, as assignee for the benefit of creditors of Sumwalt & Jones, assignees of an indebtedness of the F. J. Kaldenberg Company, a domestic corporation, sues defendant, formerly a director of said corporation. The indebtedness accrued between September 1, 1892, and January 20, 1893. On the trial the defendant moved that the plaintiff elect upon which cause of action he desired to stand; and thereupon the plaintiff, without resisting the motion, elected "to stand on the first cause of action, to wit, that the said corporation did not at any time during the year 1892 make an annual report as required by law, and did not during that year file any report either in the office of the Secretary of State or in the office of the clerk of Westchester county, as required by section 30 of the Stock Corporation Law." It is not disputed that the corporation did in fact attempt to obey the statute, in that a paper, purporting to be a report, was filed, but it is contended that such paper did not comply with the section in question, for the sole reason that it was not verified by the secretary or the treasurer of the corporation and that, therefore, this action lies. It is well settled that this action is brought to recover a penalty that is measured by the indebtedness of the corporation to the plaintiff. (*Gadsden* v. *Woodward,* 103 N. Y. 244; *National Bank* v. *Dillingham,* 147 id. 603, 609.) And in *Stokes* v. *Stickney* (96 N. Y. 323) such an action is

classified among those usually designated as actions *ex delicto*, and in *Rogers* v. *Decker* (131 N. Y. 490) it is said that the liability is one "created anew by the statute in the form of a penalty for specific acts of disobedience." Being thus penal in its character, the section should be strictly construed. Thus in *Whitney* v. *Cammann* (137 N. Y. 342) the court, in discussing this provision in its form as it then existed, say: "It has been often held that this statute was highly penal and to be construed according to the rules of construction applicable to such statutes, not to be extended by construction or made to embrace cases not within the language used." (See, also, *Garrison* v. *Howe*, 17 N. Y. 458; *Wallace* v. *Walsh*, 125 id. 35; *Whitaker* v. *Masterton*, 106 id. 277; *Brackett* v. *Griswold*, 103 id. 425; *Whitney Arms Co.* v. *Barlow*, 63 id. 62.)

It is not claimed that the plaintiff incurred loss in consequence of the form of the report as filed, but the case rests upon a strict technicality. The omission of any verification to the report by either secretary or treasurer was not due to inadvertence or careless disregard of the statute, much less to any specific act of disobedience. On the contrary, it is clearly established that there was no secretary and treasurer or secretary or treasurer, in the sense of a separate officer, throughout the time prescribed for the making and filing of the report. In November, 1891, Mr. Eberhard Faber, then secretary and treasurer, resigned in writing to the president of the corporation, "said resignation to take effect immediately." He stated at the time that his own business was very pressing, and that he had no time to devote to the duties of the offices. The president accepted the resignation, in accord with a provision of the by-laws, and thereafter and until the close of February, 1892, no successor in either office was elected, but the duties of those offices devolved upon the president and the vice-president under the by-laws, the duties of the treasurer being, however, wholly discharged by the president. It appears, too, that on account of certain absences in California and in Europe it was impossible to assemble a quorum in meeting to fill the vacancies, though several attempts were made, at any time earlier than February twenty-ninth. Plaintiff lays stress upon the fact that when a quorum was obtained at the February meeting, the minutes of that meeting show that the resignation was received and accepted, and an election of a treasurer was then had.

## 552 NOBLE *v.* EULER.

But it is well settled that acceptance of a resignation is not essential to its effectiveness. ( *Wilson* v. *Brentwood Hotel Co.,* 16 Misc. Rep. 48 ; *Chandler* v. *Hoag,* 2 Hun, 613 ; affd., 63 N. Y. 624 ; *Smith* v. *Danzig,* 64 How. Pr. 320 ; *Bruce* v. *Platt,* 80 N. Y. 379 ; *Briggs* v. *Spaulding,* 141 U. S. 132.) The testimony is that subsequent to the resignation made to the president and its acceptance by him, Mr. Faber thenceforth ceased to perform any duties of either office. Plaintiff sought to meet this by reading in evidence an indorsement " Canceled Feb. 27, 1892, E. F.," made by Mr. Faber on one of the stubs in the stock certificate book. It did not appear, however, that this was made by Mr. Faber, either as secretary or treasurer, while it is entirely natural that, still being a director of the corporation, the entry may have been made by him in such capacity or written as a memorandum by one still having an interest in the administration of affairs. During the vacancies in question, intervening November, 1891, and February 29, 1892, section 30 required that the report should be made and filed, and a report conforming in all respects to the statute, save as noted above, was made, signed and verified, and then submitted to the counsel of the company, the Hon. Clarence Lexow, who looked it over and caused it to be duly filed in duplicate. There was then neither secretary nor treasurer as a distinct officer of the corporation throughout the time prescribed for making and filing the report. This defendant could neither force the secretary and treasurer to remain in office after his resignation, nor could he alone appoint a successor or successors. Effort was made by the corporation to call meetings, but there were successive failures to obtain a quorum within the time during which the report was required by the statute. It does not appear that this defendant was an absentee, or failed, so far as in him lay, to fulfill his duties as a director. The presumption is that he did discharge them. On the contrary, he did unite in making the report, and, therefore, in this respect was not guilty of any act or omission, much less of "any act of specific disobedience." And I am of opinion that the plaintiff cannot rest any part of his case in this action upon the fact that on account of the absence of certain directors the corporation could not fill the vacancies until a time subsequent to the period prescribed for the making and filing of the report. ( *Wallace* v. *Walsh,* 125 N. Y. 26, 34.) Indeed, the corpora-

tion did not cease to perform any of its functions, but the president acted for a time as the secretary and the treasurer, and in so doing there was no violation of statute or of by-law.

Thus far I have assumed that section 30 required the verification of two officers of the corporation, and such I think is its purpose. But it has been contended before me, and with considerable force, that the statute is susceptible of a different construction, or rather different constructions without violence to sense or syntax. The section, as it stood in chapter 564 of the Laws of 1890, as amended by chapter 2 of the Laws of 1892, required the verification by the president or vice-president and secretary or treasurer, and when chapter 2 was repealed the officers last named were continued in the section as it now stands in chapter 688 of the Laws of 1892. It is argued that the section may be read as requiring the verification of the president alone or the verifications of the vice-president and treasurer, or the verification of the president, or of the vice-president, or of the secretary, or of the treasurer. To permit of the last reading the word "or" must be substituted for "and," but such a substitution is not infrequent, and as between these two words, "their strict meaning is more readily departed from than that of other words and one read in place of the other in deference to the meaning of the context." (Sutherland on Stat. Const. § 252.)

An argument for the construction that the Legislature intended to require but the verification of the president or of a single officer is found in the fact that the section reads "and verified by the *oath* (not oaths) of the president or vice-president." And it may be replied to the answer that "oath" should be construed "oaths" that "and" may as well be construed "or." This particular change in the section is comparatively new, and I find no judicial interpretation thereof by any Appellate Division or by the Court of Appeals. It may well be that lawyers might differ over the true interpretation, and respectable arguments be made by each disputant. Mindful that it is penal in its character, the language of NELSON, J., in *Hicks* v. *Minturn* (19 Wend. 550) may be cited. "The act had never been under the observation of the court, and its meaning in respect to the point wherein the defendant erred, presented a case

for construction about which the legal profession might well differ, and where, of course, it would be most unjust to hold that a layman must decide correctly at his peril. (4 Burr. 2060, 63; 3 Camp. 17; 58 Mass. 7.)" It is entirely possible, then, that the directors and the officers might have read the statute as requiring but the oath of the president. Indeed, it appears that this report was submitted to counsel and passed upon by him, and if it had been disapproved as to form, it was not difficult to have him who was then president *and* treasurer, for the one individual at that time discharged the two offices, add to his first verification, as president, a second verification as treasurer.

I think that the statute has met a substantial compliance.

The purpose of the statute is to protect creditors and to afford information to them and to others dealing with the corporation as to its financial condition and standing. ( *Wallace* v. *Walsh, supra ; Whitney* v. *Cammann, supra.*) To that end the duty of making a report is cast upon the majority of the governing or managing board of the corporation. (*Bolen* v. *Crosby,* 49 N. Y. 183.) No other officer makes the report or joins with the majority of the directors in the performance of this duty. All that serves to protect or to apprise creditors or others who may be interested in the financial condition and standing of the corporation is set forth by the majority of the directors over their names. The verification required of the officers is to add the sanctity of an oath to the report of the directors as evidence of its veracity under the penalty of perjury if the officers swear falsely. Not only then was the information required by the statute duly set forth by the proper officer, but the verification of the only officer of those named in the statute, who then existed, was duly annexed. An inquirer would find all that the statute afforded to him verified by an oath which, if false, would sustain an indictment for perjury. If the absence of further verification put him to inquiry he would find that such absence was not due to contumacy, refusal or dissent of that officer, but simply to the fact that there was none, at least as a separate official. In *The International Bank* v. *Faber* (U. S. C. C., Eastern District of New York [79 Fed. Rep. 919]), WHEELER, J., passing upon this identical report, said : " Further, I am of opinion that the statute has received substantial compliance in the execution of the report filed by the corpora-

tion." In fact the president of the corporation was also its secretary and treasurer at the time that the report was made, and his verification as secretary or treasurer, in addition to that as president, could, in the words of HARDIN, P. J., in *Novelty Manufacturing Co.* v. *Connell* (88 Hun, 257), have added nothing to the essential evidence of the truth of the report. This precise question was also passed upon in *The International Bank* v. *Faber* (*supra*), and WHEELER, J., in giving judgment for the defendant, said: " The law does not require performance of impossibilities. The defendant could not, after resignation, reinstate himself as secretary or treasurer, and cannot be liable for not doing that. No secretary or treasurer could verify the reports, for there was none to do it. It was verified as the law required, so far as there were officers for the law to apply to, and beyond that the law would be as well attained by the verification made as by anything further in that direction." *Novelty Mfg. Co.* v. *Connell* (88 Hun, 254) is also an authority that there was compliance with the statute.

And it is to be remembered that this action is, in the language of FINCH, J., in *Rogers* v. *Decker* (*supra*), " in the form of a penalty for specific acts of disobedience," and as such to be strictly construed. The policy of the law is neither to punish an honest mistake in the interpretation of a statute (*Jones* v. *Butler,* 143 N. Y. 55), nor the shortcomings of an innocent and willing officer who has to the full extent of his power conformed to the statute. (*Butler* v. *Smalley,* 101 N. Y. 71; *Vincent* v. *Sands,* 58 id. 673; § 30, chap. 688, Laws of 1892, 1st clause.) And I do not think it can be said that this defendant was bound, at his peril, to act under such final clause, inasmuch as a report was made and verified to the extent of the possibilities, and was, therefore, not a nullity. (*Bonnell* v. *Griswold,* 80 N. Y. 128.) Therefore, there was neither " refusal nor neglect " within the meaning of this provision.

Here, then, as I have said, a report was filed which set forth all of the statements prescribed by the statute, made by the designated officers, and verified by such of the officers as were in existence at the time, and indeed by the officer who was then at once the president and the secretary and treasurer, and who, therefore, by his verification, met the requirements of the statute. If he had made the one verification as treasurer or secretary as well as president, not even a

technicality could be available to the plaintiff. The plaintiff being not harassed or misled, the whole purpose and object of the statute as to him met compliance and he has no standing which calls for the enforcement of this *quasi penal* action against the defendant. In the words of BARTLETT, J., in *Jones* v. *Butler* (*supra*), "To permit such a recovery would be to make shadow substance, and allow technicality to work injustice."

The defendant also shields himself with the Statute of Limitations and insists that the lapse of *two years* is a bar to such an action. The indebtedness in suit accrued between January 1, 1892, and January 20, 1893. The Stock Corporation Law provides, at section 55, "No action shall be brought against a stockholder after he shall have ceased to be a stockholder for any debt of the corporation, unless brought within *two* years from the time he shall have ceased to be a stockholder." In *The National Bank* v. *Dillingham* (147 N. Y. 603) it was held that the term "stockholder," as employed in the section quoted, included a director. "The directors are, of course, stockholders, and it is reasonable to assume that it was not intended to charge them with personal liability on any other conditions than apply to all the members of the corporation." The defendant ceased to be a stockholder upon the dissolution of his corporation (*Hollingshead* v. *Woodward*, 107 N. Y. 96), and the order of dissolution was entered on September 23, 1893. In *The Bank of Metropolis* v. *Faber* (150 N. Y. 200) the head note in part sets forth that an action similar to this now under consideration "lay in October, *1895*, under the laws then in force, * * * for a debt of the corporation contracted in December, 1892, by reason of the failure of the directors of the corporation to make and file any report during the year 1892," but it is true that such decision disposes of a demurrer, and it does not appear that the question of the Statute of Limitations was discussed on that appeal. I hold that the decision in *National Bank* v. *Dillingham* (147 N. Y. 603) should be followed. There should be judgment for the defendant.