without any advantage, however slight, to set off against that loss. Nor does the obligation, if any, on the part of the president and trustees, growing out of the negotiations they have already had with the Montana Company, furnish a ground for declining judicial inquiry into the propriety of the contemplated sale. The prospective purchaser well knew that the question had to be submitted to a vote of the stockholders, and that there was no obligation until that was had, and that until that time the trustees were bound to entertain a more advantageous offer. The objection that the directors have not been requested to bring this action does not appear to be well taken, in view of their attitude towards the plaintiff's formal request to them to reconsider their resolution, by which they accepted, so far as they were authorized so to do, the proposition reported by the president. Clearly, it would be an idle formality to request them to seek to enjoin themselves, or to take legal measures to restrain the stockholders from doing what they have called them together to effectuate.

The chief objections to the motion are thus briefly noted, and I do not see any good reason for withholding the relief asked upon this motion, viz. that, pending the action, the consummation of the proposed sale to the Montana Company at a price much inferior to that offered by the plaintiff should be restrained. The plaintiff will be required, of course, to deposit the amount of its offer as security for any loss which may be sustained by the defendant the Anaconda Company by reason of the injunction, and to protect that company in the event of a sale to the plaintiff or at public auction being finally ordered by the court. The Central Trust Company is not restrained otherwise than its co-defendants are enjoined during the pendency of the action. The order may be settled upon notice.

---

(27 App. Div. 31.)

PRESIDENT, ETC., OF MANHATTAN CO. v. KALDENBERG et al.

(Supreme Court, Appellate Division, First Department.  March 11, 1898.)

1. CORPORATIONS—ANNUAL REPORT—VERIFICATION.
    The true construction of section 30 of the "Stock Corporation Law" (Laws 1890, c. 564, amended by Laws 1892, c. 688), requiring the annual report to be verified by the oath of the "president or vice president and treasurer or secretary," is that it must be verified by the oath of either the president or vice president, together with that of either a treasurer or secretary.

2. SAME.
    Where the corporate organization of a stock corporation provides that there shall be a president, a vice president, a secretary, and a treasurer, the fact that, through the failure of the directors to elect a secretary and treasurer, those offices are vacant at the time required by section 30 for the making and filing of the annual report, does not render a report verified by the president only a compliance with the statute, so as to relieve the directors from resulting individual liability.

3. SAME—ACTION AGAINST DIRECTORS.
    Between the 21st and 30th days of January, 1893, the K. Co. became indebted to the plaintiff upon discounts of commercial paper. In an action brought against directors of the corporation to charge them with individual liability for failure to file an annual report for 1892, which default con-

tinued up to and including January 30, 1893, *held*, that the plaintiff, though a simple contract creditor, was entitled to maintain the action.

Ingraham and McLaughlin, JJ., dissenting.

Appeal from trial term.

Action by the president and directors of the Manhattan Company against Frederick J. Kaldenberg and others. From a judgment on a verdict directed by the court, and from an order denying a new trial, defendants appeal. Affirmed.

Argued before VAN BRUNT, P. J., and McLAUGHLIN, PATTERSON, O'BRIEN, and INGRAHAM, JJ.

B. F. Tracy, for appellants.
Chas. E. Rushmore, for respondents.

PATTERSON, J. This action was brought against directors of a manufacturing corporation to charge them with the liability imposed by the terms of section 30 of the stock corporation act, for the failure of the corporation to make and file a properly verified report, as required by law, for the year 1892, such default continuing up to and including the 30th of January, 1893. At the last-mentioned date a proper report was filed. Between the 21st and the 30th days (inclusive) of January, 1893, the F. J. Kaldenberg Company became indebted to this plaintiff upon discounts of commercial paper in a large sum of money, and the indebtedness arising on such promissory notes, due and payable at the time this action was brought, is sought to be charged against the defendants (appellants herein). At the trial of the cause a verdict was directed for the plaintiff, and from the judgment entered upon the verdict, and from an order denying the defendants' motion for a new trial, this appeal is taken.

There was an issue of fact litigated on the trial in respect of which there was conflicting evidence. The withdrawal of that issue from the jury would require a reversal of the judgment if the case turned upon it, but its determination becomes unimportant in the final disposition of the cause. The rights of the parties depend upon questions of law, and, in the view we entertain of those questions, the course pursued by the court below was the correct one. That the plaintiff was not a judgment creditor at the time the action was brought does not affect the right to recover. An amendment to the complaint was allowed on the trial, which showed that certain judicial action had been taken restraining creditors of the corporation from prosecuting claims, and due proof thereof was made; but, in addition to that, we have held in several cases that a simple contract creditor may maintain an action of this kind, under such circumstances as are shown in this record. Manufacturing Co. v. Reamer, 14 App. Div. 408, 43 N. Y. Supp. 1027; Donnelly v. Pancoast, 15 App. Div. 326, 44 N. Y. Supp. 104; Rose v. Chadwick, 9 App. Div. 311, 41 N. Y. Supp. 190.

It appeared in evidence that in 1892, and long before the indebtedness of the Kaldenberg corporation to this plaintiff accrued, the directors of that company signed an annual report, which, as to its contents, complied with the requirements of section 30 of the stock corporation act, as amended in 1892. It was signed by a majority of the directors.

It was also verified by the president of the company, and was filed in the office of the secretary of state, and in the office of the clerk of Westchester county; but it was verified only by the president of the company. The contention made by the defendants (appellants) is that the authentication thus made was sufficient within the fair interpretation of the provision of section 30, relating to the subject of verification of such reports. It is claimed, and rightfully so, that the law is a penal statute, and that it is to be construed strictly in favor of the directors of a corporation. It is needless to cite authorities to that point, for they are abundant and unmistakable in their effect; but it has not yet been decided by any court of final authority that judicial construction of the admittedly penal provisions of the act of 1892, or of any other of the statutes in pari materia, from the general manufacturing law of 1848, down to the present time, is to be carried to the point of judicial nullification; and that would be the effect of the establishment of the appellants' contention in this case. Section 30 of the stock corporation act, as amended in 1892, requires the report to be signed by a majority of directors, and verified by the oath of the president or vice president and treasurer or secretary. That is a specific requirement, that two officers shall verify the report. It may be that the same person may fill two offices, and discharge the duties of both, but that situation does not arise in this case. Section 27 of the stock corporation act provides that the directors may appoint from their number a president, and "from the stockholders," a secretary and treasurer, and may appoint such other subordinate agents or employés as the by-laws may designate. By article 4 of the by-laws of the Kaldenberg Company, read in evidence, it appeared "that the officers of the company shall consist of a president, a vice president, a secretary, and a treasurer." The corporate organization of the company, therefore, provided for the four distinct officers. The appellants would read the provision of the statute under consideration as if it presented this alternative situation, namely, that the annual report should be verified by the oath of the president, and, if not by the president, then by the vice president and secretary or treasurer. That construction carries the alternative beyond the manifest meaning of the provision. The true interpretation, as we understand it, is that the report shall be verified by the oath of either the president or vice president, together with the oath of either a treasurer or secretary. The disjunctive conjunctions are interposed in the sentence, so as to limit the alternative, and the copulative conjunction is so placed as to require plurality in the verification. This interpretation is the only admissible one in view of the course of legislation upon the subject. In the general manufacturing law of 1848 (section 12), the provision was that the verification by either the president or the secretary would suffice, and the same requirement appeared in the amendment of the general manufacturing law made by section 12, c. 510, of the Laws of 1875; but when the stock corporation act came to be passed, in 1890, the policy of the law was entirely changed, and it was required that the report should be signed by the president and a majority of the directors, and be verified by the president and treasurer; thus introducing into the statute the feature of a double verification. The amendment of 1892, which is the one now in question, merely car-

ries out that same requirement of a double verification, but does not limit the making of that verification to the president and treasurer, but allows the vice president, if there be one, and the secretary, to make the verification.

It is very strenuously urged by the learned counsel for the appellants that there was no secretary or treasurer of the Kaldenberg Company during the year 1892, and up to the 30th of January, 1893, by whom the verification could be made; and, consequently, there was no way of complying with the provisions of the statute under consideration; and that an excuse for noncompliance is therefore furnished. It is claimed that inasmuch as, at the time of the making and filing the report of 1892, the president was performing the duties of secretary and treasurer, his single verification was sufficient, under the reasonable and liberal construction of the statute. We do not think that argument can be made available. We will assume that there was neither secretary nor treasurer actually having an official status by election or appointment from the time Mr. Faber handed to Mr. Kaldenberg the letter of resignation in November, 1891, down to the latter part of January, 1893, when Mr. Rankin was formally appointed. But the statute established the offices of secretary and treasurer, and the by-laws of the corporation expressly declare that there should be such officers of that corporation. The neglect of the directors of the corporation to select or appoint such officers cannot be a legal excuse for their failure to perform an act which the statute required to be done, to exempt them from liability to a penalty. If the contrary were to be allowed, directors could very readily escape from the performance of their statutory duties. The case is not like that of directors resigning at the end of their terms, and leaving the corporation without any directorate, as was the case in Wade v. Baker, 14 Hun, 617. Here there was a failure on the part of the directors to select officers required by the by-laws of the corporation, which officers, had they been selected, would have had imposed upon them, under the supervision of the directors, the duty of making, verifying, and filing a report; for the report to be filed is a report of the corporation, to be signed by a majority of the directors, and verified in the manner required by the statute. The whole report, in other words, is a matter of the directors and two of the officers specified in the statute. If the directors neglect to fill the offices, so that the statutory duty may not be performed, they cannot rely upon that neglect to escape the consequences of their failure to carry out the provisions of law.

We therefore are of the opinion that the court below properly instructed the jury that the plaintiff was entitled to recover, and the judgment should be affirmed, with costs.

VAN BRUNT, P. J., and O'BRIEN, J., concur.

INGRAHAM, J. (dissenting). The court below directed a verdict for the plaintiffs, which imposed upon the defendants a liability for a debt of this corporation of which the defendants are directors, upon

the ground that the defendants were subject to the penalty provided for by section 30 of the act in relation to stock corporations, being chapter 564 of the Laws of 1890, as amended by chapter 688 of the Laws of 1892. This penalty is sought to be imposed upon these defendants as directors of the corporation, although a report was filed which complied in all respects with the statute, except that the report was verified by the oath of the president alone. The evidence clearly established that the defendants endeavored in good faith to comply with this law. They filed a report containing the statements required by the act in question. It was signed by a majority of the directors of the corporation, and was verified by the oath of the president. It is not alleged that such report was in any respects incorrect; that it failed to give to the plaintiffs and to the public the information required by the statute; or that the plaintiffs have sustained any injury in consequence of the fact that the report was verified by but one officer of the corporation. It also appears that the report, before it was filed, was submitted to the counsel for the corporation, and was approved by him. There is nothing to question the good faith of these defendants, or their endeavor to comply with the law; and this judgment subjects the defendants to the imposition of a penalty in a very large amount, because of the fact that, by a recent change of the laws, the report was required to be verified by other officers of the corporation, as well as by the president. "The purpose of the provisions of the statute is to inform the public and those interested in the affairs of the company of its financial standing and condition from time to time; and when such information has been published in good faith, in the manner and form pointed out by the statute, the trustees have done all that was in their power to comply with the provisions of the statute, and to avoid the incurrence of a penalty for the nonperformance of the duty imposed." Wallace v. Walsh, 125 N. Y. 26, 25 N. E. 1076.

The statute referred to required every stock corporation, annually, during the month of January, to make a report as of the 1st day of January, which shall state the amount of its capital stock, the nature of its existing assets and debts, the amount of its debts, the amount of its assets, and the names of its then stockholders. Such report must be signed by a majority of its directors, and verified by the oath of the president or vice president, treasurer, or secretary, and filed, as provided for by the statute. The court below held that, by the provisions of this section of the statute, this report is required to be verified by two officers, either the president or vice president, and either the treasurer or secretary. The statute, in imposing the penalty, does not expressly say that an unverified report shall impose this penalty upon the directors. It says that every stock corporation shall make a report which shall contain the information before mentioned, and that such report shall be signed by a majority of the directors, and verified. The provision imposing the penalty provides that, if such report is not so made and filed, all the directors of the corporation shall be jointly and severally personally liable for all the debts of the corporation then existing. It is a matter of some doubt whether the making of the report included its verification, as

by the provisions of the statute the making and verification of the report appears to be distinct acts, and the provision imposing the penalty does not in express terms provide that a failure to verify the report as required by the statute shall impose this penalty upon the directors of the corporation. From the terms of the statute it is also somewhat uncertain as to what was intended by the provision as to the verification of the report. The act in its present form is contained in an amendment to the law as originally passed (chapter 688 of the Laws of 1892). The act of 1890 provided that this report shall be verified by the oath of the president and treasurer. In 1892 that was amended by requiring it to be verified by the oath of the president or vice president and treasurer or secretary. The act of 1848 required the report to be verified only by the oath of the president; but by the passage of the stock corporation law, in 1890, it seems to have been the intention of the legislature to require a double verification; and it is insisted that the amendment of 1892 still continued the necessity of a verification by two officers of the company. The language used, however, is not clear, and its construction must largely depend upon the punctuation. It is claimed by the defendants that this provision of the act is satisfied by the oath of the president, as it was intended that his oath should be sufficient, or, if his oath was not forthcoming, then the report should be verified by the vice president and either the treasurer or secretary. If there had been a comma after the word "president," in the act as passed, I think the act would bear that construction. Certainly the provision of the statute is not entirely clear. Assuming, however, that this statute does impose the penalty in case a report is filed which is not verified as therein required, and that the statute requires that the report should be verified, not only by the oath of the president or vice president, but also by the treasurer or secretary, it does not seem to me that it could have been the intention of the legislature to impose upon the directors of a corporation of this kind this extreme penalty, in a case where it was impossible to comply with the provisions of the statute, because there were not in existence the officers whose verifications to the report were required. There is no provision in the act under which this defendant was incorporated which requires it to have any particular officers. No penalty is imposed upon a corporation organized under this statute for its failure to elect any officers to the corporation.

The corporation was organized under chapter 40 of the Laws of 1848. By section 3 of that act it is provided that such corporation shall be managed by not less than three nor more than thirteen trustees. By section 5 it is provided that there shall be a president of the company who shall be designated from the number of the trustees, and also such subordinate officers as the company by its by-laws may designate. Thus, the corporation was required to have a president, but whether or not it should have other officers, and their number, was left to the corporation itself. It appears, however, that by the by-laws of the corporation it was provided that the officers of the company should consist of a president, a vice president, a secretary, and treasurer, who should severally be appointed by the trus-

tees, and who should hold office during the pleasure of the board. It further appeared that prior to November, 1891, the defendant Eberhard Faber had been secretary and treasurer of the corporation, and that about the 1st of November he wrote and delivered to the president of the corporation a letter which said, "I resign as secretary and treasury of the F. J. Kaldenberg Co., to take effect immediately;" that that letter was delivered to the president of the company about the 1st of November, was retained by the president in his possession until the 29th of February, 1892, when the letter was presented to the trustees of the corporation, and was then acted upon, and his successor as treasurer appointed. It also appeared that between the time that this letter was delivered to the president of the company and the 29th of February, when formal action was taken by the corporation, no meeting of the board of trustees was held, although several efforts were made to hold a meeting, as no quorum attended. The fact that this letter was written and delivered to the president, and was received and accepted by him, was quite satisfactorily proved, although the original letter was not produced, it having been lost; but it was sworn to by both the secretary who resigned and the president who received it and others who saw it, and the minutes of the company show that it was produced before the board of trustees on the 29th of February, and was then acted upon. There was also testimony to show that during this period the president of the company acted as secretary and treasurer, performing whatever duties were required by that officer until after the meeting of the board of trustees, November 29, 1892.

We have thus the fact that a corporation, organized under a statute which required it only to have a president, had, because of a resignation of its secretary and treasurer, no such officer, the duty of such secretary and treasurer being performed by the president, was required by law to make a report verified by the oath of the president and secretary or treasurer, attempting to comply with the law by making the report required, verified by the only officer that the corporation had who was by statute required to verify it, which report was duly filed as required by the statute which accomplished the object for which the statute was passed, the officers of the corporation thus doing all in their power to comply with the statute. Is not such an act a substantial compliance with this statute? I think it is. Looking at the object for which this statute was passed, it would seem that this report provided the information required. It was made in good faith, intending to carry out the provisions of the statute. It was signed by those whom the statute required it should be signed by, and was verified by the oath of the only officer then in office. To impose this penalty upon these defendants for not doing what it was impossible for them to do, viz. to have this report verified by the officer when there was no such officer, seems to me to impose a penalty upon these defendants for the failure to do an act which, from the nature of the case, was impossible. Suppose that this company had never had a secretary or treasurer, as it was not required to have by the statute under which it was incorporated, but that, by the by-laws of the company, the president was to per-

form the duties appertaining to such an office; could it be held for a moment that these defendants would be liable for all debts of the company if the officer who performed all the duties of president and secretary and treasurer verified the report? To hold that they would, would be to impose a penalty upon the directors for failing to provide a treasurer or secretary, and yet no such penalty is imposed by statute. Looking at this provision of the law, and the object sought to be attained by requiring, not only the president, the principal executive officer of the corporation, to verify the report, but its treasurer or secretary, who must be presumed to have knowledge of the financial affairs of the company, and the exact amount of its assets and indebtedness, what was evidently intended was that the officers who could supply the knowledge which was required to make the report, and a complete statement of the facts required, should be responsible for the report itself by verifying it; but when it appeared that one man was in reality the executive officer of the company, and also its treasurer and secretary, the object for which this double verification was required was attained, as the one man who had the most complete knowledge of the affairs of the company, and the only one who held an office in the company, except the trustees, had sworn to the truth of the statements contained in the report. The object of the statute would thus seem to have been complied with. At all events, the direction of the legislature was actually complied with so far as it was possible. The information required to be given to the public was given. No injury has resulted to any one from the fact that an additional verification was not provided, and it would seem to me that there was a substantial compliance with the statute.

This question was presented to the appellate division of this court in the Second department, in Noble v. Euler, 20 App. Div. 548, 47 N. Y. Supp. 302. That was an action brought by a creditor of this corporation to recover from one of the defendants the amount of the indebtedness due to him, upon the ground that that report was not verified as required by the statute. The question was referred to a referee, who found that the filing of this report was a substantial compliance with the statute, and, upon an appeal to the appellate division, that judgment was affirmed, upon the opinion of the referee. The question is very fully discussed in that opinion, and I think was correctly decided.

Another action, brought by a creditor of this corporation against one of the directors who was one of the defendants in this action, was before the United States circuit court in this district. See Bank v. Faber, 79 Fed. 919, affirmed by circuit court of appeals March 3, 1898, 86 Fed. ——. There Judge Wheeler held that there was a substantial compliance with the statute, saying:

"The law does not require performance of impossibilities. The defendant could not, after resignation, reinstate himself as secretary or treasurer, and cannot be liable for not doing that. No secretary or treasurer could verify the reports, for there was none to do it. It was verified as the law required, so far as there were officers for the law to apply to, and beyond that the law would be as well attained by the verification made as by anything further in that direction."

While these authorities are not controlling upon us, they are at least entitled to respect; and I do not think that we should deliberately disregard the opinion of a branch of this court sitting in another department upon the exact question presented here, which seems to have been deliberately considered and carefully decided. But, independent of those decisions, I think, applying the principle established in this state, that they were correctly decided. This statute, imposing this penalty, has been discussed in many cases by the court of appeals. Attention has again and again been called to the fact that it is a penal statute, imposing severe penalties, and is to be strictly construed. As was said by the referee in his opinion in the case of Noble v. Euler, supra, which was adopted by the appellate division in the Second department:

"The policy of the law is neither to punish an honest mistake in the interpretation of a statute, nor the shortcomings of an innocent and willing officer who has to the full extent of his power conformed to the statute. And I do not think it can be said that this defendant was bound, at his peril, to act under such final clause, inasmuch as a report was made and verified to the extent of the possibilities, and was therefore not a nullity. Therefore there was neither 'refusal nor neglect,' within the meaning of this provision."

The case of Wallace v. Walsh, supra, seems to me to be a direct authority in favor of the sufficiency of this report. In that case it was claimed that the requirements of the statute were not complied with, because such report was not signed by a majority of the trustees whom the company was authorized to elect under its charter, and that the trustees signing did not constitute a majority of such theoretical number. It appeared in that case that the certificate of incorporation provided that the number of trustees to manage the concerns of the company for the first year should consist of 12, but that since the year 1885 the stockholders had, in fact, elected but 9 trustees. The number signing the report was 6, and because 6 is not a majority of 12 it was claimed that the trustees became liable for the debts of the corporation, as a penalty for an omission by the company to make reports. In that case the legal number of trustees was 12. No certificate reducing that number had been filed, as provided for by law, and this report did not strictly comply with the statute, as it was not signed by a majority of the trustees that the company was required to have under its charter. The company had attempted to reduce the number of its trustees, but it was thus as much the duty of the stockholders of this corporation to elect 12 trustees as it was the duty of the trustees of this corporation to elect a secretary and treasurer in place of the one who had resigned. Yet the court held that such a certificate signed by 6 trustees was a substantial compliance with the statute. In discussing the question, the court say:

"Whether an omission by the stockholders at an annual meeting to elect a full board, under any circumstances, would create a vacancy which might be supplied by the trustees under the by-laws, is a matter of some doubt; but in a case where the board itself is constituted under a declaration on the part of both stockholders and trustees that a full board should consist of nine members only, and nine only were elected, we think it would be a clear case of usurpation for a board so constituted to declare the existence of vacancies, and,

of its own motion, appoint additional trustees to fill such vacancies. It cannot, we think, be doubted, but that the proceedings referred to, concurred in by every one having an interest in the corporation or its affairs, effected a practical reduction of the number of its trustees, and constituted the nine thereafter elected a de jure, as well as a de facto, board, entitled to act for the corporation in transacting its business until some party whose interests were affected should raise the question in a direct proceeding to question the exercise of such authority."

Then the court say:

"So far as the plaintiff and the public were concerned, the whole object and purpose of the statute was accomplished by the reports published; and no one has been injured or aggrieved either by what has heretofore been done or omitted by the corporation. The purpose of the provisions of the statute is to inform the public, and those interested in the affairs of the company, of its financial standing and condition from time to time. And when such information has been published in good faith, in the manner and form pointed out by the statute, the trustees have done all that was in their power to comply with the provisions of the statute, and to avoid the incurrence of a penalty for the nonperformance of the duty imposed."

It seems to me that this rule as here stated applies to this case. The condition here was that, although a secretary and treasurer had been elected, the duties of the office were principally performed by the president. In the meantime the secretary and treasurer refusing longer to continue in office had resigned, but by that resignation the office was vacant. It had no incumbent, the president of the corporation performing the duties. In this condition it became the duty of the corporation to file a report, verified by the oath of its president and secretary or treasurer, or perform that duty as well as it was able. The report was signed by a majority of the trustees. It was verified by the only existing officer of the corporation. The duty was imposed upon the corporation, not upon its officers, to make the report that this corporation did perform its duty. The violation was not in the report itself, but simply in its verification; and where the corporation has performed this duty imposed upon it by statute so far as it was possible for it to comply with the statute, and filed a report which in all respects followed the provisions of the statute, except so far as the existing conditions rendered it impossible, and where no injury resulted to any one because of the variations rendered by the existing circumstances necessary, I do not think that, in enforcing a penal statute, a construction should be given to it which will impose a penalty which it was impossible to avoid. The fact that the verification of the report, as filed in the office of the secretary of state, was not signed by the officer verifying it, would not of itself make the report a nullity. The name of the officer appeared in the verification as being the person who was duly sworn. His oath was attested by the notary public before whom it was taken, and there is nothing in the statute which requires the verification to be subscribed by the officer making it. It is enough if the report itself is verified; and the certificate of the notary before whom such verification was had is evidence of such verification.

The plaintiffs attack the good faith of this resignation of the secretary and treasurer, but the evidence was express and uncontradicted that the letter of resignation was delivered to and accepted by the

president about the 1st of November, 1891; and it is clear that, from that time on, the office was vacant.

The counsel for the defendants expressly requested the court to charge the jury that if it believed the testimony of the witnesses to the effect that a letter was written by Mr. Faber, addressed to the corporation in the fall of 1891, in which he tendered his resignation as secretary and treasurer of the corporation, to take effect immediately, and that such letter was delivered by Mr. Faber to the president of the company, for the purpose of effecting such resignation, then the jury should find for the defendants. That request was refused, and to such refusal to charge the defendants excepted. I think the defendants were entitled to have that request charged, and that, for that reason, a new trial should be ordered.

I cannot concur, therefore, with Mr. Justice PATTERSON in the affirmance of this judgment.

McLAUGHLIN, J., concurs.